# 2003 DTA 85

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**
**PANEL IV**

ENELIDA IBAÑEZ MORALES
Recurrente

v.

ADMINISTRACION DE LOS SISTEMAS DE RETIRO DE LOS EMPLEADOS
DEL GOBIERNO Y LA JUDICATURA
Recurrida

Núm. KLRA-03-00134

San Juan, Puerto Rico, a 7 de mayo de 2003

Panel integrado por su Presidente, Juez Gierbolini
y los Jueces Cordero y Rodríguez Muñiz

Cordero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Enélida Ibáñez Morales (*"Ibáñez"*) nos solicitó el 4 de marzo de 2003, la revisión de la Resolución emitida el 19 de diciembre de 2002, notificada el 9 de enero de 2003, por la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (*"la Junta"*). En la misma, la Junta denegó la solicitud de incapacidad ocupacional de Ibáñez. El 24 de enero de 2003, Ibáñez solicitó reconsideración de la referida Resolución. La Junta nada expresó en cuanto a ésta, por lo que se entiende rechazada de plano.

### I

Ibáñez trabajó como cocinera en la División de Comedores Escolares, en el pueblo de Hatillo, para el Departamento de Educación cotizando así para el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y la Judicatura (*"Sistema"*) la cantidad de 10 años. Ibáñez fue cesanteada el 11 de agosto de 1997, tiene 54 años de edad, y estudios hasta sexto grado de escuela elemental.

Ibáñez mientras trabajó como cocinera, sufrió un accidente el 16 de febrero de 1993, en el cual al coger un caldero sintió un fuerte dolor en el brazo, hombro derecho, cadera izquierda y cuello. Recibida la correspondiente atención en el Fondo del Seguro del Estado (*"FSE"*), se le diagnosticó miositis cervical con un 10% de incapacidad por pérdida de las funciones fisiológicas generales; Status Post Operatory Rt. Carpal Tunnel Sindrome con un 15% de incapacidad por pérdida de las funciones fisiológicas generales; S/P op. Left Carpal Tunnel Sindrome y S/P Rt. Shoulder, epicondritis lateral derecho, *"dorsal strain"* con un 15% de incapacidad por pérdida de las funciones fisiológicas generales. En total, Ibáñez tiene un 40% de incapacidad parcial permanente por el FSE. Fue dada de alta el 24 de marzo de 1997.

Ibáñez sufre, a su vez, de otras condiciones físicas no relacionadas con su trabajo por el FSE, tales como: Desorden distímico, Cardiomegalia, obesividad mórbida, espondilosis cervical de C6-C7, estiramiento de la lordosis cervical, hipertensión, migraña, hígado graso, y espasmos musculares. Condiciones que no fueron

evaluadas por la Junta, ya que no están relacionadas al trabajo e Ibáñez no cualifica para una incapacidad no ocupacional, ya que ésta no se encuentra en el servicio activo. Ibáñez recibe los beneficios de Seguro Social Federal.

Ibáñez fue separada de su empleo mediante estipulación a tenor con el Artículo 15 de la Ley Núm. 115 de 30 de junio de 1965. █

Así las cosas, la Junta determinó que Ibáñez no tiene derecho a la pensión ocupacional solicitada, ya que su condición física no le impide cumplir con los deberes del cargo que ostenta en el servicio al patrono o para trabajar en cualquier empleo retribuido. La Junta indicó que *"las condiciones que están relacionadas por el Fondo del Seguro del Estado y que aquejan a la apelante, no llenan o igualan los criterios del listado de impedimentos aprobados por la Administración de los Sistemas de Retiro, por lo que es imperativo concluir que la apelante puede realizar labor para el patrono de manera continua y sostenida. Aunque la apelante tiene, por las condiciones relacionadas por el Fondo del Seguro del Estado con el accidente sufrido, restricciones para manejar objetos o cosas; y tiene limitaciones y restricciones para levantar o cargar objetos pesados, no le impiden trabajar."*

## II

Con relación a los errores señalados en cuanto a la interpretación de ley, debemos recordar que el Sistema fue instituido mediante la Ley Núm. 447 de 15 de mayo de 1951, 3 L.P.R.A. § 761, *et. seq.*, con el propósito de proveerle al empleado público un seguro de dignidad, de forma tal que luego de haber dedicado al servicio público sus años fecundos, no se encuentre en la etapa final de su vida en el desamparo, o convertido en carga de parientes o del Estado. *Ramos Rivera v. E.L.A.,* ___D.P.R.___ (1999), **99 J.T.S. 63**, a la pág. 908*; Bayrón Toro v. Serra,* 119 D.P.R. 605, 616 (1987). El mismo es un estatuto remedial que persigue favorecer a los empleados cubiertos por el mismo. *Calderón v. Adm. Sistemas de Retiro,* 129 D.P.R. 1020, 1031-1032 (1992); *Morales v. Adm. Sistemas de Retiro,* 123 D.P.R. 589, 595 (1989). Constituye para el empleado, un beneficio marginal de su empleo de considerable importancia. A su vez, dicho plan de retiro representa para el patrono *"un incentivo que facilita el reclutamiento y retención del personal de calidad"*, lo que también *"hace posible la renovación periódica de sus recursos humanos según los empleados de más edad se acogen a los beneficios de jubilación"*. *Bayrón Toro v. Serra, supra,* a la pág. 616. Fue dentro de este marco conceptual que por virtud del Artículo 9, 3 L.P.R.A. § 769, se confirió a los participantes del Sistema el derecho a recibir una anualidad por incapacidad ocupacional, pero ello conforme a las condiciones y limitaciones impuestas por la propia ley, disponiendo en lo pertinente dicho artículo como sigue:

*"Todo participante que, como resultado de una incapacidad **que se origine por causa del empleo y surja en el curso del mismo, quedare incapacitado para el servicio,** tendrá derecho a recibir una anualidad por incapacidad ocupacional, siempre que:*

*a) **Se recibiere suficiente prueba médica en cuanto a la incapacidad mental o física del participante conforme a los criterios que mediante reglamento fije el Administrador.***

*b) El participante o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad.*

*c) Que el Fondo del Seguro del Estado determine que el accidente o enfermedad provino de cualquier función del trabajo o que sea inherentemente relacionado al trabajo o empleo.*

*d) El participante tendrá que radicar la solicitud, sustentada con suficiente prueba médica, dentro de los ciento ochenta (180) días en que se relacione la condición por la cual radica su solicitud."* (Enfasis suplido.)

Por otro lado, el Artículo 11 de la Ley 447, 3 L.P.R.A. § 771, dispone:

*"Para los fines de una anualidad por incapacidad ocupacional, se considerará incapacitado a un participante cuando la incapacidad **esté sustentada con suficiente prueba médica conforme los criterios que mediante reglamento fije el Administrador y dicha prueba revele que el participante está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado.** El Administrador, según lo crea conveniente y necesario, podrá requerir al participante que se someta a exámenes adicionales con médicos seleccionados por el Administrador. Cuando la prueba médica revele que el participante está total y permanentemente incapacitado para cumplir los deberes de cualquier cargo, no será necesario el examen periódico."* (Énfasis suplido.)

Por su parte, el Reglamento General para la Concesión de Pensiones, Beneficios y Derechos, Núm. 4930 de 22 de abril de 1993, establece:

*" Regla 24- Pensiones por Incapacidad Ocupacional*

*24.1- Todo participante que quede incapacitado para el servicio como resultado de una incapacidad **que se origine por causa y en el curso del empleo**, tendrá derecho a solicitar una anualidad por incapacidad ocupacional. No se tramitarán solicitudes de pensión por incapacidad de aquellas personas que a la fecha de radicación de la solicitud no estén activos, a excepción de lo **establecido en la Regla 24.3 para los participantes que hayan sido cesanteados involuntariamente."***

*24.2- Para tener derecho a una pensión por incapacidad ocupacional, deberá cumplirse con los siguientes requisitos:*

*"a) que el participante esté en servicio activo a la fecha de radicación de la solicitud;*

*b) que **se reciba suficiente prueba médica en cuanto a la incapacidad mental o física del participante;***

*c) que el Fondo del Seguro del Estado **haya determinado que la condición incapacitante está relacionada con el empleo del participante y es compensable;***

*d) que el participante o su patrono notifique dicha incapacidad por escrito al Administrador, dentro de los seis meses siguientes a la fecha en que el Fondo del Seguro del Estado haya determinado que la condición incapacitante está relacionada con el empleo del participante.*

*24.3- Texto omitido.*

*24.4- Si de la evidencia médica que consta en el expediente y conforme al listado de criterios médicos ("Adult Listings") establecidos para determinar incapacidad y del análisis e investigación que realicen los técnicos en determinación de incapacidad designados por el Administrador, no se pudiese determinar con certeza la incapacidad, se le podrá requerir al participante que se someta a aquellos exámenes médicos adicionales que se entiendan necesarios para adjudicar en sus méritos la petición por beneficios por incapacidad. Los exámenes médicos adicionales serán realizados por médicos seleccionados por el Administrador. Se considerará capacitado al participante si no está total y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido, con un sueldo y retribución por lo menos igual a la que esté percibiendo."* (Énfasis suplido.)

El listado de tales criterios médicos se define en el Reglamento General del Sistema de Retiro de los

Empleados del Gobierno de Puerto Rico y sus Instrumentalidades para la Concesión de Pensiones, Beneficios y Derechos a los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades, Núm. 4930 de 25 de junio de 1993. Allí se incorpora por referencia el Apéndice I ("*Adult Listings*") de los listados conteniendo criterios médicos para determinar incapacidades ("*Social Security Regulations: Rules for Determining Disability*"), 20 C. F.R. 404 Subpt. P, aprobados bajo las disposiciones del Título II de la Ley Federal de Seguridad Social, según enmendada.

Por otra parte, los beneficios por incapacidad de Seguro Social pueden ser concedidos tomando en cuenta criterios médico-vocacionales, tales como educación y experiencia de trabajo previa, establecidos en el Apéndice II de la reglamentación del Seguro Social Federal, 20 C.F.R. 404, Subpt. P. Sin embargo, en el Reglamento General del Sistema de Retiro no se adoptaron los criterios médico-vocacionales establecidos en el Apéndice II de la reglamentación del Seguro Social Federal, por lo que no es incompatible que a base de tales criterios a la recurrente se le hayan concedido beneficios por incapacidad por el Seguro Social Federal, y a la vez no cualifique para los beneficios que otorga la Ley Núm. 447.

Es decir, que para los fines de una anualidad por incapacidad ocupacional se considerará incapacitado a un participante cuando la incapacidad esté sustentada con suficiente prueba médica conforme a los criterios que mediante reglamento fije el Administrador y dicha prueba refleje que el participante está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado.

Por otro lado, el Artículo 10, 3 L.P.R.A. §770, dispone:

"*Todo participante que, teniendo por lo menos 10 años de servicio acreditados, se inhabilitare total y permanentemente para el servicio, debido a un estado mental o físico no provocado por hábitos viciosos, intemperancia, o mala conducta; y que por razón de ese estado estuviere incapacitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado; o para trabajar en cualquier clase de empleo retribuido por lo menos con una retribución igual a la que perciba, tendrá derecho a una anualidad por incapacidad no ocupacional. El retiro del participante tendrá lugar a petición o solicitud suya o a petición del jefe de su departamento u oficina, mientras esté en servicio el mencionado participante, y de acuerdo con las reglas sobre anualidades por incapacidad provistas en la sec. 771 de este título.*" (Enfasis suplido.)

El Reglamento dispone, en el caso de Incapacidad No Ocupacional, que:

"*Todo participante que se inhabilite total y permanentemente para el servicio por causas no relacionadas con el empleo, tendrá derecho a solicitar una anualidad por Incapacidad No Ocupacional.*

*La solicitud deberá ser debidamente completada y radicada por el participante, su patrono o por un representante autorizado por el participante.*

*Para tener derecho a una pensión por Incapacidad No Ocupacional, el participante deberá cumplir con los siguientes requisitos:*

*a) Tener por lo menos diez (10) años de servicios acreditables.*

*b) **Estar en servicio activo a la fecha de radicación de la solicitud.***

*c) Que la incapacidad física o mental no haya sido provocada por hábitos viciosos, intemperancia o mala conducta;*

*d) Que se reciba suficiente prueba de la incapacidad del participante, que demuestre que está incapacitado*

*total y permanentemente para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiese asignado o para trabajar en cualquier clase de empleo retribuido, por lo menos con una retribución igual a la que tiene derecho a estar percibiendo estando en servicio activo."*

Para que un empleado del gobierno sea acreedor a una pensión por incapacidad ocupacional o no ocupacional bajo el Sistema, la incapacidad del empleado público debe ser de tal naturaleza que le inhabilite para desempeñar las funciones de su empleo y **de cualquier otro empleo remunerativo.** *Sánchez v. A.S.R.E.G.J.,* 116 D.P.R. 372, 376 (1985). Le corresponde así, probar a satisfacción del Administrador de dicha agencia tres cosas: en primer lugar, que su incapacidad es el resultado de su empleo, en segundo lugar, que la misma es total y permanente y, por último, que es de tal naturaleza que le impide desempeñar los deberes que su patrono le hubiera asignado o trabajar en cualquier otro empleo que no sea el que desempeña al momento de solicitar la pensión, pero cuya retribución no sea menor a la de dicho empleo. Este es el *quántum* de prueba con el que hay que cumplir ante la Administración de los Sistemas de Retiro. Ahora bien, la incapacidad debe ser "*sustentada con suficiente prueba médica*". 3 L.P.R.A. § 771. La concesión de los beneficios por incapacidad ocupacional va a depender de la prueba que presente la persona que pretende recibir los beneficios. Por ello, es necesario suficiente prueba médica tendente a demostrar la incapacidad según se define por el Sistema.

## III

Por otro lado, con relación a los errores señalados sobre las determinaciones de hechos realizadas, la conclusión de que Ibáñez no es acreedora de la incapacidad ocupacional y de que ésta puede hacer otro trabajo remunerativo, debemos establecer que en cuanto a las determinaciones de hechos de las agencias, los tribunales apelativos deben ser cautelosos al intervenir con las determinaciones administrativas de los foros especializados porque éstas merecen gran consideración y respeto por los tribunales en la etapa de revisión judicial, *Rivera Concepción v. Administración de Reglamentos y Permisos,* ___D.P.R.___ (2000), **2000 J.T.S. 155**, a la pág. 160; *Assoc. Ins. Agencies, Inc. v. Com. de Seguros,* 144 D.P.R. 425, 436 (1997); *Misión Ind. v. J.P. y A.A.A.,* 142 D.P.R. 656, 672-673 (1997); *Metropolitana, S.E. v. A.R.P.E.,* 138 D.P.R. 200, 213 (1995); *Viajes Gallardo v. Clavell,* 131 D.P.R. 275, 289-290 (1992); *Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 692, 699 (1975). Es principio reiterado que las conclusiones e interpretaciones de los organismos administrativos merecen gran deferencia por parte de los tribunales. *García Oyola v. J.C.A.,* 142 D.P.R. 532, 540 (1997). Los tribunales deben ser cautelosos al intervenir con las determinaciones administrativas. *Metropolitana S.E. v. A.R.P.E., supra,* a la pág. 213. El fundamento para ello es el hecho de que son las agencias administrativas las que poseen la experiencia y los conocimientos altamente especializados que se encuentran dentro del ámbito de sus facultades y responsabilidades. *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.,* 133 D.P.R. 521, 533 (1993). Por tanto, se establece una presunción de legalidad y corrección a favor de las agencias administrativas. *A.R.P.E. v. Junta de Apelaciones sobre Construcciones y Lotificaciones,* 124 D.P.R. 858, 864 (1989); *Murphy Bernabé v. Tribunal Superior, supra,* a la pág. 699.

La revisión judicial es limitada. Sólo determina si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que abusó de su discreción, *Municipio de San Juan v. Junta de Calidad Ambiental,* ___D.P.R.___ (1999), **99 J.T.S. 152**, a la pág. 125; *T-JAC, Inc. v. Caguas Centrum Limited Partnerhip, S.E.,* ___D.P.R.___ (1999), **99 J.T.S. 60**, a la pág. 884; *Com. Vec. Pro-Mej., Inc. v. J.P.,* 147 D.P.R. 750, 761 (1999); *Fuertes y otros v. A.R.P.E.,* 134 D.P.R. 947, 953 (1993). A tenor con esta norma de deferencia, los tribunales no alteran las determinaciones de hechos de los organismos administrativos si del expediente administrativo surge evidencia sustancial que las sostenga, *Municipio de San Juan v. Junta de Calidad Ambiental,* ___D.P.R.___ (2000), **2000 J.T.S. 193**, a la pág. 474; *Asociación de Vecinos del Hospital San Jorge v. United Medical Corporation y Gerónimo Partnership, Etc.,* ___D.P.R.___ (2000), **2000 J.T.S. 21**, a las págs. 560-561; *Domínguez Talavera v. Caguas Expressway Motors, Inc.,* ___D.P.R.___ (1999), **99 J.T.S. 85**, a las págs. 1067-1068; *T-JAC, Inc. v. Caguas Centrum Limited Partnership, S.E., supra,* a la pág. 884; *García Oyola v. J.C.A.,* 142 D.P.R. 532, 540 (1997); *Fac. C. Soc. Aplicadas, Inc. v. C.E.S., supra,* a las págs. 532-533.

La evidencia sustancial *"es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión,"* Asociación de Vecinos del Hospital San Jorge v. United Medical Corporation y Gerónimo Partnership, Etc., *supra*, a la pág. 561; *Ramírez Rivera v. Departamento de Salud*, 147 D.P.R. 901, 906 (1999); *Hilton Hotels v. Junta de Salario Mínimo*, 74 D.P.R. 670, 687 (1953).

Así es que para convencer al tribunal de que la evidencia utilizada por la agencia para formular una determinación de hecho no es sustancial, la parte afectada debe demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada hasta el punto de que no pueda ser concluido que la determinación de la agencia fue razonable de acuerdo a la totalidad de la prueba que tuvo ante su consideración, *Municipio de San Juan v. Junta de Calidad Ambiental, supra*, a la pág. 473; *Ramírez Rivera v. Departamento de Salud, supra*, a la pág. 906; *Metropolitana, S.E. v. A.R.P.E., supra*, a la pág. 213; *Hilton Hotels v. Junta de Salario Mínimo, supra*, a la pág. 686. No obstante, el tribunal debe sostener la resolución de un conflicto probatorio por parte de la agencia, siempre que ésta haya sido apoyada en una base racional, *J.R.T. v. Línea Suprema, Inc.*, 89 D.P.R. 840, 849 (1964).

### IV

De acuerdo con las normas antes expuestas, examinemos el caso de autos. Un examen objetivo de la prueba médica que forma parte del apéndice del recurso de epígrafe, nos lleva a concluir que la resolución recurrida está apoyada por prueba sustancial obrante en el expediente y que no existe razón alguna para sustituir nuestro criterio por el de la Junta. No se acreditó, a satisfacción de la Administración, que la empleada que solicita la pensión se encuentra total y permanentemente incapacitada e imposibilitada de desempeñar los deberes de cualquier cargo que en el servicio el patrono le hubiere asignado para trabajar en cualquier empleo retribuido con retribución igual, por lo menos a la que percibe. *Rodríguez Ortiz v. Comisión Industrial*, 90 D.P.R. 764, 772 (1964); *Arzola Maldonado v. Comisión Industrial*, 92 D.P.R. 549, 552 (1965). Estamos conscientes que disposiciones estatutarias que versan sobre pensiones, como lo es la Ley Núm. 447, deben interpretarse liberalmente a favor del beneficiario, a fin de que se cumpla el propósito reparador para las cuales fueron aprobadas. Véase *Calderón Morales v. Adm. de los Sistemas de Retiro*, 129 D.P.R. 1020 (1992). Sin embargo, Ibáñez no demostró que existía otra prueba que razonablemente redujera o menoscabase el peso de la evidencia suministrada por la Junta, hasta el punto de demostrar que ésta actuó arbitrariamente. Por otro lado, a pesar de que ésta recibe Seguro Social, dicha agencia federal utilizó otros criterios provenientes de la propia Ley de Seguro Social, e.g., educación, conocimientos técnicos, edad, los cuales no están comprendidos bajo nuestra Ley Núm. 447 para otorgar una incapacidad ocupacional.

Ciertamente, de acuerdo con las condiciones relacionadas a su trabajo, Ibáñez tiene una incapacidad que si bien constituye alguna limitación funcional de la persona, no le inhabilita para seguir trabajando en cualquier empleo remunerativo. Tampoco podemos considerar aquellas condiciones no relacionadas al trabajo para otorgar un beneficio que nace de la dedicación al servicio público.

Concluimos que la determinación de la Junta está sostenida por evidencia sustancial que obra en el expediente, por lo que dicha determinación no merece nuestra intervención. La prueba médica presentada por Ibáñez no demostró que ésta era acreedora a una incapacidad total y permanente, según lo antes expresado.

### V

Por los fundamentos antes expresados, se expide y se confirma la resolución recurrida.

Lo acuerda y manda este Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

---

**ESCOLIO 2003 DTA 85**

**1.** *"El Secretario de Educación podrá separar del servicio a cualquier empleado o maestro, sin que esto se entienda como destitución, en los siguientes casos:*

*(a) ...*

*(b) Cuando se determine que dicho empleado o maestro está física y/o mentalmente incapacitado para desempeñar los deberes de su puesto.*

*(c) Cuando el empleado o maestro presente un patrón de ausentismo repetido."* 18 L.P.R.A. § 274j.

Nótese que se refiere a los deberes de su puesto a diferencia de la Ley Núm. 447 que se refiere a cualquier otro empleo remunerativo que el patrono le pueda asignar.