ERNESTO ARZOLA MALDONADO, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada.

*Número:* CI-65-3     *Resuelto:* 24 de junio de 1965

550

Miguel A. Román, abogado del recurrente; Donald R. Dexter, Miguel A. Guzmán Soto y G. Méndez Muñoz, abogados del Administrador del Fondo del Seguro del Estado.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Trabajaba el recurrente como ajustador de la Universal C. I. T. Credit Corporation. Sufrió un infarto del miocardio posterior el 14 de febrero de 1964. Se determinó que existía relación causal por agravación de su enfermedad arteriosclerótica. El informe médico especial firmado por la Dra. Silvia Santiago estableció que "el paciente tiene enfermedad orgánica del corazón de tipo arteriosclerótico e hipertensivo. Desarrolla disnea y dolor precordial al caminar un bloque al nivel, al subir 5-6 escalones y algunas actividades de la vida diaria. Recreación y 'stress' emocional también le producen síntomas". El doctor Ramos Lugo, quien rindió informe sobre la fijación de incapacidad, manifiesta que "En exámenes practicados por Cardiólogos se desprende que el lesionado padeció de infarto del miocardio que puede ser desencadenado por las labores

que desempeña en su trabajo. En la actualidad el paciente padece de Hipertensión y Arteriosclerosis con episodios de disnea y dolor pre-cordial a esfuerzo mínimo. BP. 150/80. Corazón agrandado. Según opinión de la Dra. Santiago el lesionado amerita una incapacidad de un 66 2/3% funciones fisiológicas generales".

El Fondo le reconoció una incapacidad parcial permanente equivalente a la pérdida de un 66 2/3% de las funciones fisiológicas generales. En estos casos la ley dispone que no se pagará una suma mayor de seis mil dólares. 11 L.P.R.A. sec. 3, pág. 3 (suplemento 1965).[1] No conforme acudió a la Comisión Industrial.

Luego de celebrar una vista y oir peritos la Comisión Industrial resolvió aumentar la incapacidad a la pérdida de un 85% de las funciones fisiológicas generales y ordenó al Administrador del Fondo del Seguro del Estado hiciera efectiva al lesionado la compensación correspondiente en la forma que dispone la ley.

El recurrente solicitó entonces de la Comisión que incluyera en su resolución una determinación al efecto de "que la pérdida del 85% de las funciones fisiológicas generales . . . equivale a una incapacidad total permanente". Invocó nuestra decisión en *Rodríguez Ortiz* v. *Comisión Industrial,* 90 D.P.R. 764 (1964).

---

[1] Dispone así la Sec. 3 en la parte pertinente:

"Se considerará incapacidad parcial permanente la pérdida de un pie o pierna, una mano, un brazo, un ojo, uno o más dedos, ya sea de los pies o de las manos y cualquiera anquilosis o fractura o dislocación donde haya habido rotura de ligamentos y donde la restauración no sea completa. Por las incapacidades parciales permanentes especificadas a continuación, el obrero o empleado lesionado recibirá una compensación adicional consistente en el sesenta y seis y dos tercios (66⅔) por ciento del jornal que percibía el día del accidente, o que hubiera de percibir a no ser por la ocurrencia del accidente, durante el número de semanas según se fija en la tabla que se inserta a continuación; Disponiéndose, que en ningún caso se pagará al obrero o empleado más de treinta y cinco (35) dólares ni menos de ocho (8) dólares por semana; y, Disponiéndose, además, que en ningún caso se pagará una suma mayor de seis mil (6,000) dólares."

En la resolución dictada a la anterior moción, la Comisión apunta que "luego de una vista pública le fijamos a este obrero una incapacidad equivalente a la pérdida de un 85% de las funciones fisiológicas y que estudiada nuevamente la prueba obrante en autos y no habiendo nada que haga variar el criterio sustentado por nosotros al dictar nuestra antes mencionada resolución Resolvemos *No Ha Lugar* a la reconsideración solicitada".

Accedimos a revisar la actuación de la Comisión. Procede modificarla.

■ En *Rodríguez Ortiz* v. *Comisión Industrial*, supra, hicimos un abarcador estudio del problema planteado en el presente recurso. Aludimos a la disposición de la Ley de Compensaciones a Obreros que establece que "Se considerará incapacidad total . . . las lesiones que tengan por consecuencia la incapacidad total y permanente del obrero o empleado para hacer toda clase de trabajo u ocupaciones remunerativas". 11 L.P.R.A. sec. 3. Expresamos entonces que para hacer una determinación al efecto de si un obrero o empleado tiene incapacidad total hay que tomar en cuenta "(1) el impedimento físico del trabajador y su extensión, medido y expresado desde el punto de vista médico en términos de pérdida de la función fisiológica general, y (2) el efecto de ese impedimento físico sobre la habilidad del obrero o trabajador para realizar un empleo remunerativo".

■ Apuntado lo anterior, pasamos a estudiar la forma en que se habían aplicado disposiciones similares a la nuestra en otras jurisdicciones. Concluimos que "de acuerdo con las autoridades y la doctrina aceptada generalmente el criterio fundamental para resolver si un trabajador ha quedado totalmente incapacitado es la habilidad que posea después de la lesión o accidente para dedicarse a un trabajo que le produzca ingreso en forma ordinaria y de manera estable".

Con esta norma presente, veamos qué prueba tuvo ante su consideración la Comisión Industrial.

Ante la Comisión depusieron tres médicos. El Dr. Leonardo Méndez presentado por el recurrente manifestó:

"El está incapacitado casi totalmente. Lo único que podría hacer, en mi opinión, son trabajos completamente sedentarios en su casa, cualquier cosa que envuelva esfuerzo físico o de caminar más de media cuadra, sería perjudicial a su salud."

El recurrente presentó además al Dr. José Rullán, especializado en Medicina Interna y Cardiología. Manifestó que:

"Yo no creo que esté capacitado en la actualidad para trabajar recibiendo remuneración a base de un salario. No creo que pueda responder a un horario completo de cuatro horas y tampoco de ocho horas fijas."

A la pregunta de si creía que no podía hacer ningún tipo de trabajo contesta:

"Yo creo que no está en condiciones ahora de desempeñar cualquier tipo de trabajo donde se le exija por parte de su patrono el rendir un horario fijo de 8:00 a 12:00 y 1:00 a 5:00 de la tarde, inclusive si hay un esfuerzo físico, y donde tenga que caminar, no está en condiciones."

El Dr. Mario Calcagno, perito médico del Fondo, manifestó que:

"Hemos oído las alegaciones de los dos peritos cardiólogos, Dr. Méndez y Dr. Rullán y creemos que la incapacidad de este obrero puede ser aumentada a un 80% de las funciones fisiológicas generales."

El Dr. H. Vázquez Milán, Director Médico de la Comisión Industrial, expresó lo siguiente:

"Sr. Comisionado, la lesión sufrida por este obrero de naturaleza severa y sintomática, de tipo anginoso, le invalida para cualquier clase de trabajo. Por sus limitaciones, en vista médica el Dr. de Juan consideró que la incapacidad podría subir hasta un 85% de las funciones fisiológicas generales."

■ Con esta prueba ante sí la Comisión Industrial modificó la determinación del Fondo aumentando la incapacidad de un 66 2/3% a un 85%. Pero esa prueba requería otra

determinación. Aunque los deponentes no lo expresaron directamente, sus testimonios claramente establecieron que el obrero carece de habilidad para dedicarse a un trabajo que le produzca ingreso en forma ordinaria y de manera estable.

*Procede, pues, modificar la resolución dictada por la Comisión Industrial en el sentido de expresar que el recurrente tiene una incapacidad total permanente.*