Gilberto Gierbolini, Juez Ponente
*887 TEXTO COMPLETO DE LA SENTENCIA
Mediante el presente recurso, el apelante Francisco Torres Rivera (Torres Rivera), solicita la revocación a la negativa de conceder en su caso los beneficios por incapacidad ocupacional que concede la Ley Número 447 del 15 de mayo de 1951, según enmendada, 3 L.P.R.A. Sección 761. La Resolución recurrida fue emitida el 25 de mayo de 1997 por la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (ADSR). Este caso número 96-0246 fue archivado en autos el 12 de junio de 1997.
No conforme con esta decisión, Torres Rivera presentó escrito de revisión el 27 de octubre de 1997. En éste, alega que la Junta de Síndicos carecía de evidencia sustancial para sustentar la decisión.
El Tribunal ha considerado el señalamiento de error invocado y RESOLVEMOS que resulta procedente CONFIRMAR la resolución emitida por la ADSR. Para una adecuada compresión de esta determinación, exponemos un breve recuento del trasfondo fáctico y procesal del caso.
I
Torres Rivera trabajó por quince años como guardia en el cuerpo de la Policía de Puerto Rico. Como parte de sus funciones, Torres Rivera utilizaba vehículos oficiales para investigar las querellas de vehículos hurtados. Durante este tiempo el recurrente sufrió varios accidentes en el trabajo. A consecuencia de los mismos, el Fondo del Seguro del Estado a compensó a Torres Rivera por pérdida en un 65% de las funciones fisiológicas generales. Esta paga fue otorgada por los accidentes ocurridos. El 25 de agosto de 1981, 17 de septiembre de 1986 y 14 de diciembre de 1987 con adjudicaciones parciales de un 5%, 30% y 30% respectivamente.
Torres Rivera, mientras realizaba sus servicios en la Autoridad de Energía Eléctrica el 25 de agosto de 1981, tuvo que recoger su rotén del piso y sintió un fuerte dolor en la espalda que fue diagnosticado como "Esguince Lumbar". Al diligenciar una orden de arresto, el 17 de septiembre de 1986, Torres Rivera pisó un hueco en el pavimento que le obligó a forzar su espalda y piernas para no caer, lo cual le causó un fuerte dolor de espalda. El diagnóstico fue de "Chronic Low Back Pain, HNPL4-L5 y HNPL5-S1".
Torres Rivera, en su empleo el 14 de diciembre de 1987, sufrió otro accidente mientras trataba de brincar una verja. Al apoyar sus manos hacia arriba sintió un fuerte dolor en el hombro derecho que resulto ser "Esguince Hombro Derecho Crónico y Esguince Torácico
El recurrente solicitó a la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura que reconociera una incapacidad ocupacional debido a su condición fisiológica diagnosticada por el Fondo del Seguro del Estado. Esta petición fue negada el 28 de agosto de 1995 y notificada el 15 de septiembre de 1995. Ante oportuna solicitud de reconsideración, ésta fue denegada el 25 de abril de 1996 y notificada el 2 de mayo del 1996.
La determinación de no conceder incapacidad ocupacional fue apelada ante la Junta de Síndicos, el 3 de junio de 1996. Esta confirmó la decisión de la ADSR. Torres Rivera presentó una oportuna Moción de Reconsideración y sobre ésta la Junta no emitió determinación posterior.
Así las cosas, el recurrente presentó ante nos recurso de revisión el 27 de octubre de 1997. En éste, plantea la comisión del siguiente error:

*888
"Erró la honorable Junta de Síndicos al concluir que el apelante-recurrente no está incapacitado conforme la evidencia sustancial en el expediente y el testimonio vertido el día de la vista por el apelante-recurrente."

A base de un análisis de la prueba en el expediente, la doctrina de Deferencia Judicial a las Agencias Administrativas, reglamentos y leyes aplicables al casó, la sentencia apelada es CONFIRMADA. Veamos:
II
La Ley Número 447 del 15 de mayo de 1951, Ley del Sistema de Retiro de los Empleados del Gobierno, 3 L.P.R.A. Sección 769, en su Artículo 11 dispone que:

"Artículo 11- Reglas Regirán Anualidades por Incapacidad

Para los fines de una anualidad por incapacidad ocupacional o no ocupacional, se considerará incapacitado a un participante cuando la incapacidad esté sustentada con suficiente prueba médica conforme a los criterios normalmente aceptados en el área de la compensación por incapacidad que mediante Reglamento fije el Administrador y dicha prueba revele que el participante está total y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado o para trabajar en cualquier empleo retribuido con retribución igual, por lo menos a la que percibe. El administrador, según lo crea conveniente y necesario, podrá requerir al participante que se someta a exámenes adicionales con médicos seleccionados por el administrador."
Por otra parte, el Reglamento General para la Concesión de Pensiones, Beneficios y Derechos Número 42.3 del 30 de abril de 1990, señala en su Regla 24 lo siguiente:

"Regla 24. Pensiones por Incapacidad Ocupacional

1. Todo participante que quede incapacitado para el servicio como resultado de una incapacidad que se origine por causa y en el curso del empleo, tendrá derecho a solicitar una anualidad por incapacidad ocupacional.

2. Para conceder una pensión por incapacidad deberá cumplirse con los siguientes requisitos:

a. que el participante esté en servicio activo;

b. que se reciba suficiente prueba médica en cuanto a la incapacidad mental o física del participante;

c. que el Fondo del Seguro del Estado haya determinado que la condición incapacitante está relacionada con el empleo del participante;

d. que el participante o su patrono notifique dicha incapacidad por escrito al Administrador, dentro de los seis meses siguientes a la fecha en que el Fondo del Seguro del Estado haya determinado que la condición incapacitante está relacionada con el empleo del participante.

3. Si de la evidencia médica que consta en el expediente y conforme al Listado de Criterios Médicos ("Adult Listing") establecidos para determinar incapacidad y de las entrevistas que realicen los técnicos de Determinación de Incapacidad, designados por el Administrador, no se pudiera determinar incapacidad, el Administrador podrá requerir del participante que se someta a aquellos exámenes médicos adicionales, que entienda necesarios para adjudicar en sus méritos la petición de beneficios por incapacidad. Los exámenes médicos adicionales, serán realizados por médicos seleccionados por el Administrador. Se considerará capacitado al participante si no está total y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que su patrón le hubiere asignado o para trabajar en cualquier empleo retribuido con un sueldo o retribución igual, por lo menos a la que esté percibiendo.

*889
4. Si de la evidencia médica que consta en el expediente y conforme al listado de Criterios Médicos ("Adult Listings") establecidos para determinar incapacidad y del análisis e investigación que realicen los técnicos en Determinación de incapacidad designados por el Administrador, no se pudiese determinar con certeza la incapacidad, se le podrá requerir al participante que se someta a aquellos exámenes médicos adicionales que se entiendan necesarios para adjudicar en sus méritos la petición de beneficios por incapacidad. Los exámenes médicos adicionales serán realizados por médicos seleccionados por el Administrador. Se considerará capacitado al participante si no está total y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier empleo retribuido, con sueldo o retribución, por lo menos igual a la que esté percibiendo.

Suficiente prueba médica en cuanto a la incapacidad mental o física del participante conforme a los criterios normalmente aceptados en el área de la compensación por incapacidad que mediante reglamento fije el Administrador; (b) el participante o el patrono, de acuerdo con los Reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad."

La concesión de los beneficios por incapacidad ocupacional va a depender de la prueba que presente la persona que pretende recibir los beneficios. Por ello, es necesario suficiente prueba médica tendente a demostrar que está total y permanentemente incapacitado e imposibilitado para cumplir con los deberes de su cargo u otro empleo con retribución similar.
Las agencias administrativas son las que tienen el" expertise" para evaluar la prueba médica obrante en el expediente administrativo. Estas cuentan con experiencias y conocimientos altamente especializados sobre los asuntos que le son encomendados. Por esto es que las decisiones de los organismos administrativos son tratadas con gran deferencial judicial, Rubín Ramírez v. Trías Monge, 111 D.P.R. 481, 484-485 (1981). Cualquier intervención con dichas determinaciones sólo serán válidas y justificadas cuando la agencia obre de manera arbitraria e ilegal, de forma tan irrazonable que su actuación constituye un abuso de discreción o la determinación no se sostiene con prueba sustancial, Misión Industrial de P.R. Inc. v. Junta de Planificación, 142 D.P.R. _ (1997), 97 J.T.S. 34, a la página 728; Fuertes v. A.R.P.E., 136 D.P.R. _ (1993), 93 J.T.S. 165, a la página 11383; Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
El alcance revisor de este tribunal está delimitado por la Sección 4.5 de la Ley de Procedimientos Uniformes, 3 L.R.R.A. Sección 2175. Este requiere confirmar las determinaciones de hecho de una agencia administrativa siempre y cuando sean sostenidas por evidencia sustancial contenida en el expediente administrativo. Los tribunales deben indagar sobre la razonabilidad de la decisión administrativa y no deben sustituir el criterio del organismo por el suyo propio excepto cuando ésta sea totalmente arbitraria o que se infrinjan valores constitucionales fundamentales. La Facultad para las Ciencias Sòciales v. C.E.S., 134 D.P.R. _ (1993), 93 J.T.S. 88, a la página 10783. En el caso de autos no existen ninguna de estas condiciones y corresponde al recurrente el peso de la prueba para demostrarlas, Henríquez v. C.E.S., 120 D.P.R. 194, 210 (1987).
Torres Rivera tiene una "incapacidad que si bien constituye alguna limitación funcional de la persona, no le inhabilita para seguir sirviendo eficientemente al Pueblo de Puerto Rico. La incapacidad que obligue al retiro del empleado con derecho a la anualidad que autoriza este artículo debe ser de tal naturaleza que le inhabilite para desempeñar las funciones de su empleo y de cualquier otro empleo remunerativo," Sánchez Nieves v. Administración de los Sistema de Retiro de los Empleados del Gobierno y la Judicatura, 116 D.P.R. 372, 376 (1985), Opinión Número 1961-12 en Opiniones Srio. Justicia P.R. 45 (1961). Véase Rodríguez Ortiz v. Comisión Industrial, 90 D.P.R. 764, 772 (1964), y Arzola Maldonado v. Comisión Industrial, 92 D.P.R. 549, 552 (1965). A tales efectos, véase las siguientes expresiones de la Junta:

"...el señor Torres Rivera no está total y permanentemente incapacitado. Se trata de un hombre de 42 años de edad, quien practicó deportes y le queda aún mucho que ofrecer de su persona en beneficio del patrono."

III
Un análisis integral de la totalidad del expediente administrativo demuestra que el mismo era suficiente para sostener las determinaciones adoptadas por la Junta de Síndicos de la Administración *890 de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura. En atención a ello, CONFIRMAMOS la resolución recurrida.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General