# 2007 DTA 94

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL IV**

LUIS F. PÉREZ MARTÍNEZ
Recurrente

v.

ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO DE LOS
EMPLEADOS DEL GOBIERNO Y LA JUDICATURA
Recurrida

Núm. KLRA-2006-00947

San Juan, Puerto Rico, a 30 de julio de 2007

Panel integrado por su Presidente, el Juez Arbona Lago,
el Juez Miranda De Hostos y la Juez Velázquez Cajigas

Velázquez Cajigas, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Luis F. Pérez Martínez (recurrente) acude ante este foro apelativo de la resolución emitida por la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (Junta de Síndicos), el día 23 de agosto de 2006, notificada el 15 de septiembre de 2006. En dicha resolución, la Junta de Síndicos confirmó la decisión de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (Administración) que denegó los beneficios por incapacidad ocupacional y no ocupacional del recurrente.

Según exponemos a continuación, analizado el expediente en su totalidad y el derecho aplicable, *confirmamos* la determinación administrativa emitida por la Junta de Síndicos.

### I

El Sr. Luis F. Pérez Martínez, de cincuenta y nueve (59) años de edad, se desempeñó como ayudante de electricista en la Autoridad de Acueductos y Alcantarillados durante veintidós (22) años. Su preparación académica es de cuarto (4to.) año de Escuela Superior. El día 20 de marzo de 1997, sufrió un accidente en el trabajo mientras laboraba en la Autoridad de Acueductos y Alcantarillados. Se reportó a la Corporación del Fondo del Seguro del Estado (CFSE) que describió el accidente como uno en que *"mientras bajaba un aire*

*acondicionado de la pared para reparar un desperfecto sintió fuerte dolor en la espalda. La lesión sufrida como consecuencia del accidente es "Strain lumbar sacral y HNP L4-L5". La misma le fue relacionada con el trabajo siendo compensado, resultando con una incapacidad de 5% FFG L/S Strain HNP L4-L5"* (Apéndice 1).

El recurrente presentaba otras condiciones no relacionadas al trabajo como fibromialgia, ruptura del menisco de la rodilla derecha-estatus operación del menisco-, artritis en la rodilla izquierda, HNP L-3, L-4 y L-5 – S1, espasmos cervical, lumbar y dorsal, radiculopatía L4-L5, miositis cérvico lumbar y una condición emocional.

El 22 de febrero de 2000, el recurrente solicitó pensión por incapacidad ocupacional a la Administración. Le fue denegada la misma el 10 de enero de 2001. Ante moción de reconsideración, la Administración se reafirmó en su dictamen mediante comunicado del 21 de febrero de 2001, notificado el 26 de febrero de 2001. Concluyó que:

*"De los informes médicos que constan en nuestro poder relativos a su condición física, se ha determinado que aún está física y mentalmente capacitado(a) para desempeñar labores en el servicio público.*

.........

*Otras razones: Las condiciones no relacionadas por el Fondo del Seguro del Estado, también fueron evaluadas. No obstante, médicamente se determinó que las mismas no son incapacitantes."*

El 19 de marzo de 2001, presentó su apelación ante la Junta de Síndicos.

Luego de los procedimientos de rigor, la Junta de Síndicos emitió resolución el 27 de febrero de 2003, notificada el 18 de marzo de 2003, donde determinó devolver el caso a la Administración para reevaluación, toda vez que el día de la vista ante la Junta de Síndicos se presentó evidencia e informes médicos que no fueron presentados ante la Administración. Hizo alusión a uno de 12 de junio de 2002 por el Dr. José F. Irizarry (reumatólogo), y otro de 19 de junio de 2002 por la Dra. Beatriz Trujillo Miranda (Siquiatra).

El 28 de agosto de 2003, la representación legal del recurrente sometió ante la Administración los documentos médicos adicionales que se detallan como:

*"(a) Certificado de tratamiento Psiquiátrico cumplimentado por la Dra. Beatriz Trujillo Miranda, Instituto Psiquiátrico del Norte, de fecha 7 de julio de 2003.*

*(b) "Fibromyalgia and Myofascial Pain Syndrome Functional Questionnaire" cumplimentado por el Dr. José Irizarry, Reumatólogo, de fecha 7 de julio de 2003.*

*(c) "Orthopedic Impairments Medical Report" cumplimentado por el Dr. Mark Trautmann Peters de fecha 7 de julio de 2003.*

*(d) Certificación de Compensabilidad del Fondo del Seguro del Estado bajo el caso número 97-71-00551-0 de fecha 22 de junio de 2003.*

*(e) Notas de Progreso de la Clínica de Fisioterapia y Rehabilitación de la Montaña."*

El 20 de julio de 2004, la Administración se reafirmó en la denegatoria de la reclamación de la anualidad por incapacidad ocupacional por entender que el recurrente no está total y permanentemente incapacitado para cumplir los deberes del puesto que en el servicio del patrono se le hubiere asignado. Se determinó, además, que

las condiciones no relacionadas por la CFSE fueron evaluadas y no son incapacitantes.

El 23 de agosto de 2006, notificado el 15 de septiembre de 2006, la Junta de Síndicos confirmó la **resolución** de la Administración, en la que enumeró y sopesó todo el expediente médico que tuvo ante sí la Administración, más el testimonio vertido en la vista administrativa por el único testigo que declaró, el recurrente.

Citamos de la resolución, en lo aquí pertinente:

*"La evidencia médica sobre las condiciones evaluadas por la Administración de los Sistemas de Retiro, que constan en él, al momento de tomar su determinación, se detalla a continuación:*

*a. Examen Radiológico, consistente en un CT Scan de la espina lumbar, realizado por el Dr. René Dietrich, el 10 de abril de 1997. "Impression: Study compatible with degenerated disc and bulging annulus fibrosus with small central disc protrusion and mild compression of the dural sac at L4-L5."*

*b. Examen Electromiográfico de las extremidades inferiores, realizado el 27 de enero de 1998. En los comentarios se indica que el estudio es normal, no hay radiculopatía lumbosacral ni polineuropatía.*

*c. Evaluación Mental, realizada por la Dra. Beatriz Trujillo, el 1 de diciembre de 1998. En la evaluación se describe a una persona que llega con su hermano, apariencia adecuada, cooperador, conducta normal, actividad psicomotora normal, lógico, coherente, relevante, lenguaje normal, deprimido, nervioso, con miedo, ansioso, orientado en las tres esferas, memoria reciente conservada, remota parcialmente conservada inmediata y de corto plazo afectada, atención adecuada, concentración afectada, juicio adecuado, introspección adecuada, poca tolerancia al estrés. Se le diagnosticó con depresión mayor severa, recurrente.*

*d. Examen Radiológico, de la espina torácica y lumbosacral, realizado por la Dra. Carmina Hernández, el 29 de febrero de 2000. "Thoracic Spine: There is evidence of thoracolumbar dextroscoliosis. The vertebral body heights and intervertebral disc spaces are preserved. Lumbosacral Spine: There is evidence of lumbar dextroscoliosis. There is partial sacralization of L5. There is straightening of the lumbar lordosis. There is narrowing of the intervertebral disc space at the level of L1-L2. Marginal osteophytes are noted. The vertebral body heights are preserved."*

*e. Evaluación Mental, realizada por la Dra. Beatriz Trujillo, el 1 de junio de 2000. En la evaluación se describe aseado, con expresión verbal clara, cooperador, actividad psicomotora normal, afecto apropiado, ansioso, lógico, coherente, relevante, sentimientos de frustración, coraje, inadecuacidad, sin ideas suicidas u homicidas, sin ideas delirantes, sin alucinaciones, memorias conservadas, excepto la inmediata que está disminuida, atención y concentración disminuidas, orientado en las tres esferas e introspección adecuada. Se le diagnosticó con depresión mayor severa recurrente. Añade que comparte con familiares inmediatos, no va a fiestas, ve televisión, escucha la radio, camina por su casa y no realiza tareas del hogar.*

*f. Evaluación Médica, realizada por el Dr. José Irizarry, el 10 de julio de 2000. En la misma se indica que lo visita desde febrero de 2000. No se le ha hecho cirugías ni hay contraindicaciones, encuentra un espasmo muscular en ambas piernas, no puede caminar en talones ni en puntillas, reflejos disminuidos en patelar y anchillas, normal el resto. Se le diagnosticó con HNP L4-L5 con radiculopatía, moisitis severa en la región cervical y lumbar y osteoartritis.*

*g. Revisión Médica del Expediente, realizada por la Dra. Lydia Fernández Abalde, el 4 de agosto de 2000. En la misma se indica que se revisa los informes de tratamiento, completos y descriptivos, no se documenta trastorno de pensamiento ni déficit cognoscitivo, no limitaciones marcadas en capacidad de concentración*

233

*cuido propio y relaciones sociales. Participante no llena ni iguala la severidad de los criterios A1 y B del listado 12.04 para una incapacidad por condición emocional.*

*h. Evaluación Médica, realizada por la Dra. Evelyn Rodríguez Aja, el 19 de octubre de 2000. Se describe a una persona que aparenta su edad, manidiestro, limpio, afeitado, con buena atención, espontáneo, con marcha y postura normal, informante de su historial, no cojea, sube y baja de la camilla normalmente, juicio adecuado, orientado en las tres esferas, buena memoria, lógico, coherente y relevante. Se añade que el tono muscular es normal, no hay atrofia, con fuerza muscular de 5/5 en todo el cuerpo, reflejos normales y se paró en talón y puntillas normalmente. Un leve espasmo lumbar, sin hinchazón, pulsos normales. Se le diagnosticó con esguince lumbar y HNP L4-L5 por historial.*

*i. Revisión Médica del Expediente, realizada por el Dr. Rafael Díaz Montaño, el 12 de diciembre de 2000. en la misma se concluye que no llena el listado 1.05C.*

*j. Examen Radiológico de la rodilla derecha, realizado por el Dr. Luis Alonso Dafause, el 26 de junio de 2001. "The right knee joint is normal. There is prominent exostosis at the proximal fabular and tibial metadiaphyses."*

*k. Examen Radiológico, consistente en un MRI de la rodilla derecha, realizado por el Dr. Antonio Díaz, el 30 de enero de 2002. "Diagnostic impressions: Findings favor tear of the dorsal horn of the medial meniscus rather than mixoid degeneration."*

*l. Evaluación Mental, realizada por la Dra. Beatriz Trujillo el 19 de junio de 2002. Se indica que ve al paciente desde agosto de 1998. Las últimas visitas fueron febrero, junio, agosto y noviembre de 2001 y enero, abril de 2002. No ha tenido hospitalizaciones por su condición emocional. Se describe a una persona cooperadora, con buena apariencia, conducta normal, actividad psicomotora disminuida, lenguaje claro, normal a lento el fluido del pensamiento, afecto apropiado, orientado en las tres esferas, ansioso, memoria disminuida, juicio conservado, introspección adecuada, atención y concentración disminuida. Añade que durante el día mira la televisión, comparte con su esposa, no ayuda en los quehaceres del hogar, contacto social disminuido, la mayor parte del tiempo la pasa en el hogar, poca persistencia, no puede mantener atención y concentración en sus quehaceres. Se le diagnosticó con depresión mayor severa, recurrente y estima un GAF de 50-55%, entiende que sí puede manejar sus fondos.*

*m. Evaluación Médica sobre las condiciones de fibromialgia y dolor miofacial, realizado el 7 de julio de 2003. En la misma se revela que se espera que los impedimentos duren más de doce meses, con síntomas de fatiga crónica, sueño no recuperado, rigidez mañanera, múltiples puntos de sensibilidad, entumecimiento, cambios en el ánimo, hinchazón, síndrome del intestino irritado, depresión deterioro cognoscitivo, sensitividad al calor frío y humedad, ansiedad, mareos, dolor de cabeza o migraña, irritabilidad inexplicable y problemas al subir y bajar. Encuentra dolor en la espina cervical, lumbar, torácica, el pecho, ambos hombros, ambos brazos, caderas, manos, piernas, rodillas, pies y tobillos. Los factores que precipitan el dolor son cambios en el ambiente, estrés, humedad, frío y movimientos. Factores emocionales contribuyen a la severidad de los síntomas y son consistentes con las limitaciones de movimiento, sufre de dolor severo regularmente y se le impone una limitación severa, no puede caminar más de un bloque y no puede estar sentado ni parado por más de dos horas, no puede trabajar 8 horas, requiere un trabajo que se le permita cambios de posiciones, requiere que tenga que descansar sin previo aviso, puede cargar sólo menos de diez libras, tiene limitación severa al alcanzar cosas, calcula que el paciente se tendría que ausentar de su trabajo más de tres veces al mes. Padece de nauseas, calambres ansiedad. Se le diagnosticó con fibromialgia, osteoartritis generalizada, HNP lumbar y ruptura del menisco de la rodilla derecha.*

*n. Evaluación Mental, realizada por la Dra. Beatriz Trujillo, el 7 de julio de 2003. Se describe a un*

*persona cooperadora, lenguaje claro, con actividad psicomotora lenta, afecto apropiado, ansioso, triste, tenso, lógico, coherente, relevante. Se le diagnosticó con depresión mayor severa y se le estima un FAF de 53%.*

*o. Evaluación Médica, realizada por el Dr. Mark Trautmann, el 25 de agosto de 2003. En la misma se indica que no padece de artritis, con fuerza muscular de 5/5, sin desórdenes en la espina vertebral, sin fracturas. Se le diagnosticó con estatus post operación del menisco.*

*p. Evaluación Médica, realizada por el Dr. William Matos, el 2 de marzo de 2004. Se describe como alerta, buen orientado, cooperador, bien desarrollado y nutrido. Añade que en el cuello tiene un movimiento normal, sin masas, en las extremidades no hay edema, cianosis, úlceras, astrofia muscular, venas varicosas y los pulsos periferales están normales, con fuerza muscular de 5/5. Se le diagnosticó con síndrome de dolor de espalda y una menisectomía en la rodilla derecha.*

*q. Revisión Médica del Expediente, realizada por el Dr. Rodríguez de la Obra, el 22 de abril de 2004. En la misma se concluye que no llena los requisitos del listado, 1.02, 1.03A y B, 1.05A, 1.05C, 1.11, 1.13 ni 10.08.*

*r. Revisión Médica del Expediente, realizada por el Dr. Alfredo Hurtado de Mendoza, el 13 de julio de 2004. En los comentarios se indica que la revisión de la nueva evidencia no documenta severidades para cumplir con los requisitos del listado 12.04."*

Durante la Vista Administrativa en su fondo, la parte Apelante estuvo representada por la Lcda. Nilda Díaz Olazagasti y la parte Apelada por la Lcda. Magali Cruz Caballero. Una vez iniciada la vista, el apelante indicó que en ocasiones conduce distancias cortas. Añade que trabajó para la Autoridad de Acueductos y Alcantarillados como Ayudante de Electricista y procedió a describir sus funciones. En el 1997 se reporta al Fondo por un accidente que sufre cuando para prevenir que un acondicionador de aire se cayera se lastimó la parte baja de la espalda. Le sacaron un CT Scan y le dieron terapias que consistían en *"pads"* calientes y corriente. Después que le dieron de alta regresó a su trabajo, pero no pudo continuar. Indicó que el doctor Irizarry, reumatólogo, lo inyecta mensualmente para controlarle el dolor. Manifestó que se siente bien de la rodilla, pero el doctor lo inyectó en la región hace como tres meses. Además, se atiende con la doctora Trujilla, psiquiatra. Ya no toma pastillas para dormir. Indicó tener buenas relaciones con los vecinos y su esposa, se lleva bien con sus nietos, camina en la pista por las mañanas, allí habla con los muchachos, escucha chismes, ve televisión, va con la esposa a hacer la compra, va a la plaza del pueblo, escucha los deportes por el radio, va la iglesia y cuida unos pichones y pollos. Alega que no puede regresar a su trabajo por la condición de la espalda y la rodilla. No ha sido operado de la espalda. Se le preguntó sobre la fibromialgia e indicó que desconocía de la misma. Fue operado de la rodilla en el 2002, no necesita bastón para caminar.

Al confirmar, la Junta de Síndicos entendió que el recurrente no presentó *"prueba suficiente para demostrar que cumple con los requisitos de severidad de la Administración para ser beneficioso de una pensión por incapacidad"*.

Ante moción de reconsideración, la Junta de Síndicos no actuó, por lo que el Sr. Pérez Martínez recurre en la causa del epígrafe y nos plantea los siguientes señalamientos:

*"A. Erró la Honorable Junta de Síndicos del Sistema de Retiro porque su resolución no está basada en evidencia sustancial, puesto que, al evaluar la evidencia presentada bajo los criterios establecidos por el Administrador (Listings), existe suficiente prueba médica para determinar la incapacidad de la parte recurrente por su condición emocional.*

*B. Erró la Honorable Junta de Síndicos del Sistema de Retiro del Gobierno en no darle importancia al hecho de que la Administración del Seguro Social le otorgó la pensión por encontrarlo incapacitado total y*

*permanentemente.*

*C. Erró la Honorable Junta de Síndicos del Sistema de Retiro en no explicar en la resolución porqué la parte recurrente no cumple con los criterios médicos.*

*D. Erró la Honorable Junta de Síndicos del Sistema de Retiro en la interpretación que hace de la ley y el Reglamento, ya que es irrazonable y produce resultados inconsistentes con, o contrarios, al propósito de la Ley y lleva a la comisión de una injusticia.*

*E. Erró la Honorable Junta de Síndicos en darle más peso al resumen de expedientes del asesor médico de la Administración que nunca ha visto a la parte recurrente, en vez de darle más peso a los médicos de cabecera de la parte recurrente que le ofrecen tratamiento y conocían bien sus condiciones y establecen que él está incapacitado total y permanentemente.*

*F. Erró la Honorable Junta de Síndicos en la definición de lo que es una persona incapacitada total y permanentemente, según la Ley Número 447 del 15 de mayo de 1951.*

*G. Erró la Honorable Junta de Síndicos en concluir que la parte recurrente no cumple con el listado 12.04 de los "Listings" del Seguro Social y en no tomar en consideración si la combinación de condiciones de la apelante incapacitan totalmente.*

*H. Erró la Honorable Junta de Síndicos al no evaluar la capacidad funcional de la peticionaria para hacer otro trabajo remunerativo, a la luz de su edad, preparación académica y experiencia de trabajo."*

## II

La Ley Núm. 447 de 15 de mayo de 1951, según enmendada, conocida como la Ley de Retiro de Personal del Gobierno del Estado Libre Asociado de Puerto Rico, (Ley de Retiro) 3 L.P.R.A. sec. 761, *et. seq.,* creó un sistema de retiro y beneficios denominado *"Sistemas de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades".* 3 L.P.R.A. sec. 761.

La Ley de Retiro, *ante,* dispone lo siguiente en:

*"Sec. 769.   **Sistema de Retiro de los Empleados-Anualidad por incapacidad ocupacional***

*Todo participante que, como resultado de una incapacidad que se origine por causa del empleo y surja en el curso del mismo, quedare incapacitado para el servicio, tendrá derecho recibir una anualidad por incapacidad ocupacional, siempre que:*

*(a) Se recibiere suficiente prueba médica en cuanto a la incapacidad mental o física del participante conforme a los criterios que mediante reglamento fije el Administrador.*

*(b) El participante o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad.*

*(c) El Fondo del Seguro del Estado determine que el accidente o enfermedad provino de cualquier función del trabajo o que sea inherentemente relacionado al trabajo o empleo.*

*(d) El participante tendrá que radicar la solicitud, sustentada con suficiente prueba médica, dentro de los ciento ochenta (180) días en que se relacione la condición por la cual radica su solicitud.*

*Sec. 770.    Sistema de Retiro de los Empleados-Anualidad por incapacidad no ocupacional*

*Todo participante que, teniendo por lo menos 10 años de servicios acreditados, se inhabilitare para el servicio, debido a un estado mental o físico y que por razón de ese estado estuviere incapacitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado, tendrá derecho a una anualidad por incapacidad no ocupacional. El retiro del participante tendrá lugar a petición o solicitud suya o a petición del jefe de su departamento u oficina, mientras esté en servicio el mencionado participante, y de acuerdo con las reglas sobre anualidades por incapacidad provistas en la sec. 771. de este título.*

........

*Sec. 771.    Sistema de Retiro de los Empleados-Reglas que regirán las anualidades por incapacidad*

*Para los fines de una anualidad por incapacidad ocupacional o no ocupacional, se considerará incapacitado a un participante cuando la incapacidad esté sustentada con suficiente prueba médica, conforme a los criterios que mediante reglamento fije el Administrador, y dicha prueba revele que el participante está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado. El Administrador, según lo crea conveniente y necesario, podrá requerir al participante que se someta a exámenes adicionales con médicos seleccionados por el Administrador. Cuando la prueba médica revele que el participante está total y permanentemente incapacitado para cumplir los deberes de cualquier cargo, no será necesario el examen periódico.*

........

*La Administración adoptó el Reglamento General para la Concesión de Pensiones, Beneficios y Derechos, número 4930 del 25 de junio de 1993. La Regla 24.2 del referido Reglamento establece los siguientes requisitos para que se le reconozca a una parte el derecho a una pensión por incapacidad ocupacional:*

*(a) que el participante esté en servicio activo a la fecha de radicación de la solicitud;*

*(b) que se reciba suficiente prueba médica en cuanto a la incapacidad mental o física del participante;*

*(c) que el Fondo del Seguro del Estado haya determinado que la condición incapacitante está relacionada con el empleo del participante y es compensable;*

*(d) que el participante o su patrono notifique dicha incapacidad por escrito al Administrador, dentro de los seis meses siguientes a la fecha en que el Fondo del Seguro del Estado haya determinado que la condición incapacitante está relacionada con el empleo del participante."*

En cuanto a incapacidad no ocupacional, el Reglamento dispone en su Regla 25.3 que:

*"(a) tener por lo menos diez (10) años de servicios acreditables;*

*(b) estar en servicio activo a la fecha de radicación de la solicitud;*

*(c) que la incapacidad física o mental no haya sido provocada por hábitos viciosos, intemperancia o mala conducta;*

*(d) que se reciba suficiente prueba de la incapacidad del participante, que demuestre que está incapacitado total y permanentemente para cumplir con los deberes de cualquier cargo que en el servicio del patrono se le*

*hubiese asignado o para trabajar en cualquier clase de empleo retribuido, por lo menos con una retribución igual a la que tenía derecho a estar percibiendo estando en servicio activo."*

El criterio último para reconocer una incapacidad ocupacional o no ocupacional es que el solicitante esté *"total y permanente incapacitado e imposibilitado para cumplir con los deberes de cualquier cargo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que esté percibiendo.".* Regla 24.4 y Regla 25.4 del Reglamento, *supra.*

En *Sánchez v. A.S.R.E.G.J.*, 116 D.P.R. 372, 376, el Tribunal Supremo resolvió:

*"...una leve incapacidad que si bien constituye alguna limitación funcional de la persona, no le inhabilita para seguir sirviendo eficientemente al Pueblo de Puerto Rico. La incapacidad que obligue al retiro del empleado con derecho a la anualidad que autoriza este artículo debe ser de tal naturaleza que le inhabilite para desempeñar las funciones de su empleo y de cualquier otro empleo remunerativo."* Opinión Núm. 161-12 en Opiniones Srio. Justicia P.R. 45 (1961). Véanse, *Rodríguez Ortiz v. Comisión Industrial*, 90 D.P.R. 764, 772 (1964), y *Arzola Maldonado v. Comisión Industrial*, 92 D.P.R. 549, 552 (1965).

La Ley Núm. 447, *supra,* determina un sistema de retiro y beneficios para los empleados del Gobierno de Puerto Rico. En relación a la incapacidad ocupacional, establece que el empleado que queda incapacitado para el servicio, como resultado de una incapacidad por causa del empleo o en el curso del mismo, tendrá derecho a recibir una anualidad, siempre que, entre otros requisitos, se recibiere suficiente evidencia médica que pruebe su incapacidad conforme a los criterios que el Administrador fije mediante reglamento. Artículo 9, 3 L.P.R.A. sec. 769. *López Echevarría v. Adm. de los Sistemas de Retiros,* 168 D.P.R. ___, (2006), **2006 J.T.S. 146**, resuelto el 30 de agosto de 2006.

Para los fines de una anualidad por incapacidad ocupacional o no ocupacional, se considerará incapacitado a un participante cuando su incapacidad sea sustentada con suficiente prueba médica, conforme a los criterios fijados por el Administrador mediante reglamento, y dicha prueba revele que el participante está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado. Artículo 11, 3 L.P.R.A. sec. 771. *López Echevarría v. Adm. de los Sistemas de Retiros, ante.*

Los criterios médicos para probar incapacidad, mencionados en la Regla 24.4 del Reglamento, son los adoptados por las autoridades federales bajo la Ley de Seguridad Social Federal, 20 C.F.R. Pt. 404, Subp. P., App. I. *López Echevarría v. Adm. de los Sistemas de Retiros, ante.* Sin embargo, la determinación de incapacidad que haga la Administración del Seguro Social Federal no obliga necesariamente a la Junta de Síndicos ni al foro judicial. Corresponde al Sistema de Retiro hacer su propia evaluación y llegar a su propia decisión. Tanto la determinación de incapacidad ocupacional concedida por el CFSE como la de la Administración del Seguro Social Federal, no son obligatorias ni concluyentes para el Sistema de Retiro. Las determinaciones de incapacidad de las tres agencias concernidas son independientes y se sustentan en criterios diferentes, por lo que cada cual tiene la potestad de hacer sus propias evaluaciones independientes de las otras. Opinión de conformidad emitida por el Juez Asociado Fuster Berlingeri en *S.L.G. Afanador v. Roger Electric Co. Inc.,* 156 D.P.R. 651, 679 (2002).

Por otra parte, en materia de revisión judicial de determinaciones administrativas, el Tribunal Supremo ha sido consistente en establecer que las decisiones de los organismos merecen la mayor deferencia de los tribunales. Ello responde a que la agencia administrativa ostenta el conocimiento experto y tiene la experiencia especializada en los asuntos encomendados. *Hernández v. Centro Unido de Detallistas*, 168 D.P.R. ___ (2006), **2006 J.T.S. 140**; *P.C.M.E. v. J.C.A.*, 166 D.P.R. ___ (2006), **2006 J.T.S. 7**; *Martínez v. Rosado*, 165 D.P.R. ___ (2005), **2005 J.T.S. 132**; *Polanco v. Cacique Motors*, 165 D.P.R. ___ (2005), **2005 J.T.S. 101**.

El anterior estado de derecho está en armonía con las disposiciones de la Ley de Procedimiento Administrativo Uniforme (L. P. A. U.), 3 L.P.R.A. sec. 2101, *et seq* (2006). Por virtud de este cuerpo legal, el tribunal sostendrá aquellas determinaciones de hechos que *"se basen en evidencia sustancial que obra en el expediente administrativo"*. 3 L.P.R.A. sec. 2175 (2006).

Ahora bien, la deferencia de la agencia cede, *"cuando la determinación no está basada en evidencia sustancial; cuando el organismo administrativo erró al aplicar la ley; y cuando se trata de una actuación irrazonable o ilegal"*. *Román Matos v. Junta Examinadora*, 165 D.P.R. ____ (2005), **2005 J.T.S. 143**. Véase, además, *Hernández v. Centro de Detallistas, supra.*

La evidencia sustancial se refiere a *"aquella [prueba] relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión"*. *Socorro Rebollo v. Yiyi Motors*, 161 D.P.R. ___, **2004 J.T.S. 4**. Se refiere al juicio y valoración que hace el juzgador de los hechos en el ámbito administrativo con respecto a la evidencia que tiene ante sí, el cual merece la mayor deferencia de los tribunales.

La revisión judicial es limitada. Sólo determina si la agencia administrativa actuó arbitraria o ilegalmente, o en forma tan irrazonable que abusó de su discreción, *López Echevarría v. Adm. de los Sistemas de Retiro, supra; Municipio de San Juan v. Junta de Calidad Ambiental*, 149 D.P.R. 263 (1999), página 125; *T-JAC, Inc. v. Caguas Centrum Limited Partnership, S.E.*, 148 D.P.R. 70 (1999), página 884; *Comité de Vecinos Pro-Mejoramiento, Inc. v. Junta de Planificación*, 147 D.P.R. 750 (1999), página 732. A tenor con esta norma de deferencia, los tribunales no alteran las determinaciones de hechos de los organismos administrativos si del expediente administrativo surge evidencia sustancial que las sostenga, Sección 4.5 de la L.P.A.U., 3 L.P.R.A. Sección 2175; *Municipio de San Juan v. Junta de Calidad Ambiental*, 152 D.P.R. 673 (2000); *Asociación Vecinos del Hospital San Jorge v. United Medical Corporation y Gerónimo Partnership, Etc.*, 150 D.P.R. 70 (2000), páginas 560-561; *Domínguez Talavera v. Caguas Expressway Motors, Inc.*, 148 D.P.R. 387 (1999), páginas 1067-1068; *García Oyola v. J.C.A.*, 142 D.P.R. 532, 540 (1997).

El propósito de la regla de evidencia sustancial, aplicable a las determinaciones de hechos de las agencias administrativas, es *"evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor,"* *López Echevarría v. Adm. de los Sistemas de Retiro, supra; López v. Junta de Planificación, supra*, página 673. Véase, además, *Reyes Salcedo v. Policía de Puerto Rico*, 143 D.P.R. 85, 95 (1997). Según nuestro Tribunal Supremo la ha definido anteriormente, evidencia sustancial *"es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión,"* *Asociación Vecinos del Hospital San Jorge v. United Medical Corporation y Gerónimo Partnership, Etc., supra*, página 561; *Ramírez Rivera v. Departamento de Salud*, 147 D.P.R. 901 (1999), página 817; *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64, 131 (1998).

Por consiguiente, para convencer al tribunal de que la evidencia utilizada por la agencia administrativa para formular su determinación de hecho no es sustancial, la parte afectada debe demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada hasta el punto de que no pueda ser concluido que la determinación de la agencia fue razonable de acuerdo a la totalidad de la prueba que tuvo ante su consideración, *Municipio de San Juan v. Junta de Calidad Ambiental, supra*, página 474; *Ramírez Rivera v. Departamento de Salud, supra*, página 817; *Metropolitana, S.E. v. A.R.P.E., supra*, página 213. No obstante, el tribunal debe sostener la resolución de un conflicto probatorio por parte de la agencia, siempre que ésta haya sido apoyada en una base racional, *J.R.T. v. Línea Suprema*, 89 D.P.R. 840, 849 (1964).

### III

El análisis que hiciera la Junta de Síndicos, ente especializado y que tuvo la oportunidad de sopesar y aquilatar la prueba testifical junto con la evidencia documental médica, arribó a la conclusión que las condiciones orgánicas y emocionales que sufre el recurrente, según el listado aplicable 1.05C, 1.13 y 11.04, no

cumple con los criterios de severidad que justifique la concesión de los beneficios de una anualidad por incapacidad de la Administración. No encontramos base en el expediente para considerar tal conclusión errónea, por lo que tampoco podemos sustituir el criterio del foro administrativo.

## IV

Por los fundamentos expuestos, *confirmamos la resolución emitida por la Junta de Síndicos el 23 de agosto de 2006.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones