GEORGINA HERRERA RAMOS, lesionada, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, INC., demandada y recurrida, FONDO DEL SEGURO DEL ESTADO, asegurador y recurrente; TROPIC WEAR, INC., patrono.

*Número:* O-78-427     *Resuelto:* 22 de enero de 1979

---

*Francisco Falú Lebrón, Antonio Acevedo Torres* y *Jorge Márquez Gómez,* abogados de la Administradora del Fondo del Seguro del Estado; *Joaquín Peña Peña,* abogado de la lesionada.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

En apelación instada por la lesionada Georgina Herrera Ramos contra una negativa del Fondo del Seguro del Estado a reconocerle compensación, el 10 de marzo de 1977 la Comisión Industrial revocó dicha decisión y ordenó se le brindara la íntegra protección de ley. Los honorarios de abogado fueron fijados en un quince por ciento (15%) a ser satisfechos "conforme con la Ley".

A tono con dicho mandato el Fondo le proveyó tratamiento médico, y el 17 de enero de 1978 la dio de alta reconociéndole un setenta por ciento (70%) de incapacidad por pérdida de las funciones fisiológicas generales, que traducida en términos económicos representó una compensación ascendente a $10,000.00. A su abogado se le concedió la suma de $1,000.00 de honorarios. Esta determinación y cómputo fue reducido a escrito y notificado en un documento denominado "Orden *Interna* de Pago de la Compensación por Incapacidad Parcial Permanente Adjudicada", haciéndose constar como nota en su parte inferior lo siguiente: "El expediente de este caso *deberá* ser referido al Comité de Factores Socio Económicos de la Región correspondiente *para evaluación y recomendación final.*" (Énfasis nuestro.) No contiene apercibimiento del derecho de apelación ante la Comisión Industrial.

■ A manera de paréntesis, el carácter interino de la orden y el referimiento del caso al Comité de Factores Socio-Económicos—integrado por un grupo de profesionales—representa la estructura y mecánica administrativa que el Fondo desarrolló hace algún tiempo para implementar nuestra doctrina establecida en *Arzola Maldonado* v. *Comisión Industrial,* 92 D.P.R. 549 (1965) y *Rodríguez Ortiz* v. *Comisión Industrial,* 90 D.P.R. 764 (1964), en el sentido de que en la determinación de si un obrero tiene o no incapacidad total es menester evaluar los siguientes extremos: a) el carácter del impedimento físico del trabajador y su extensión, medido y expresado desde el punto de vista médico en términos de pérdida de la función fisiológica general, y b) el efecto de ese impedimento físico sobre la habilidad del obrero o trabajador para realizar un empleo remunerativo. El Comité interviene, por encomienda del Administrador, cuando a un obrero se le reconoce una incapacidad de un sesenta por ciento (60%) o un setenta por ciento (70%) de las funciones fisiológicas generales; estudia, examina y evalúa, en adición a la incapacidad desde el punto de vista médico, factores tales como la

edad, profesión, escolaridad, oportunidades de empleo en el área donde reside el obrero y otros; y oportunamente rinde un informe determinando si el lesionado puede realizar aquellos aspectos sustanciales y básicos de su trabajo, o si sus servicios son tan limitados que no hay mercado o demanda para los mismos. En resumen, el Comité es un cuerpo auxiliar permanente del Administrador para evaluar en ciertos casos, el conjunto de factores médicos y socio-económicos reveladores de "la habilidad que posea [un obrero] después de la lesión o accidente para dedicarse a un trabajo que le produzca ingreso en forma ordinaria y de manera estable"; *Rodríguez Ortiz*, supra, 775. Su función rectora es asesorar al Administrador y proveerle elementos de juicio fundados para que éste llegue a una decisión informada y razonable respecto al potencial de trabajo remunerativo de un lesionado.

Así las cosas y por conducto de su abogado, la lesionada Herrera, en 7 de febrero de 1978 apela ante la Comisión Industrial la Orden Interna de Pago. (1) Sin embargo, el 31 de marzo de 1978, a la luz de un informe favorable del Comité de Factores Socio-Económicos, el Fondo otorga a la obrera una incapacidad total y permanente. Esta decisión es notificada formalmente a la obrera y su abogado. Este, mediante moción solicita de la Comisión Industrial la fijación de honorarios adicionales por el aumento de incapacidad decretado de un setenta por ciento (70%) hasta una incapacidad total y permanente. La Comisión, el 7 de agosto de 1978, concedió dichos honorarios. Una reconsideración presentada por el Fondo fue declarada sin lugar por falta de jurisdicción al haberse interpuesto después de transcurridos diez (10) días de recibida la decisión.

A solicitud del Fondo, expedimos orden de mostrar causa.

---

(1) Se trata de un simple documento titulado "Escrito de Apelación" que contiene tres escuetas alegaciones, entre ellas, no estar conforme con la decisión, suplicando se revoque la misma.

## I

La orden interna del Administrador fijando interinamente en setenta por ciento (70%) de incapacidad y refiriendo el caso al Comité de Factores Socio-Económicos, por propia naturaleza, no es apelable ante la Comisión Industrial. Constituye una determinación inicial rápida sujeta a ser mejorada ulteriormente que únicamente beneficia inmediatamente al obrero. De hacerse depender tal decisión del examen final conjugando los factores socio-económicos—ante el cúmulo de casos pendientes—la solución se toma mayor tiempo en detrimento del lesionado. Como corolario de esta conclusión, la Comisión Industrial no adquirió jurisdicción por razón del escrito de apelación interpuesto prematuramente en 7 de febrero de 1978 por el abogado de la lesionada Herrera Ramos. (²) Careciendo de dicha jurisdicción, no podía a su vez dicho foro apelativo oponer el argumento jurisdiccional para denegar la solicitud y oposición del Fondo respecto a la concesión de honorarios de abogado.

## II

En las circunstancias de autos, no procede aumento alguno de honorarios de abogado. Hemos visto que luego del Administrador haber denegado compensación, la Comisión revocó dicho dictamen y ordenó se confiera la íntegra protección de ley. El Fondo, después de proveer tratamiento médico, reconoce provisionalmente una incapacidad ascendente a setenta por ciento (70%) y mediante Orden Interna de Pago, refiere el caso al Comité de Factores Socio-Económicos. Como el máximo de honorarios por gestión asciende a mil ($1,000.00) dólares, satisface esta cantidad al abogado de la obrera. Se radica apelación de esta Orden Interna ante la Comisión In-

---

(²) Aclaramos que no estamos ante una situación fáctica, que fuere de aplicación lo preceptuado en el Art. 7 de la ley sobre demora en la resolución de casos por el Administrador.

dustrial. Subsiguientemente, el Fondo en un término razonable, en virtud de las recomendaciones del Comité de Factores Socio-Económicos emite decisión otorgándole una incapacidad total y permanente. La representación legal radica moción sobre fijación de honorarios de abogado adicionales y la Comisión accede. Cometió error.

■ Mediante la Ley Núm. 69 de 23 de junio de 1965 (11 L.P.R.A. sec. 36, párrafo segundo) se enmendó el Art. 35 de la Ley de Compensaciones por Accidentes del Trabajo estableciéndose que el por ciento que la Comisión Industrial reconociese como honorarios de abogado sería fijado con cargo al Fondo y no a la compensación concedida. En *Rodríguez* v. *Comisión Industrial,* 97 D.P.R. 432 (1969), sostuvimos que esta enmienda era aplicable a todo caso en trámite independientemente de que hubiese surgido con anterioridad a su vigencia. Y conforme *Wiscovitch* v. *Comisión Industrial,* 99 D.P.R. 651, 656 (1971), dijimos que este artículo tiene como fin:

". . . proveer servicios gratuitos de abogado a los obreros reclamantes colocándolos en una mejorada posición de hacer valer sus derechos frente a un sinnúmero de cuestiones altamente técnicas y complicadas tanto en su aspecto legal como médico que suelen surgir en el trámite de estos casos. Si a esto se le añade la posición de marcada ventaja que disfruta el Administrador, con la asistencia legal y técnica de personal especializado que tiene a su alcance en estos asuntos, en su capacidad dual de hacer labor investigativa de las reclamaciones que se entablan contra el Fondo y, adjudicativa, en lo que respecta al pago de compensaciones y liquidación de los casos de obreros, se comprenderá la razón de un sistema llamado a fomentar, no desalentar, el asesoramiento y ayuda legal a los obreros lesionados o sus beneficiarios en la tramitación de sus reclamaciones."

■ Al examinar la reglamentación vigente sobre el particular, (³) advertimos los siguientes extremos: casos de in-

---

(³) El Reglamento Interno y Reglas de Procedimiento de la Comisión Industrial, en lo relativo a honorarios de abogado provee:

capacidad (parcial) permanente y casos de incapacidad total o muerte. La primera clasificación se desglosa en consideración al nivel en que fueron rendidos los servicios de abogado: ante el Administrador o la Comisión Industrial. Así, por servicios prestados ante el Administrador, se concederá en concepto de honorarios de abogado *una suma que no excederá de 5 por ciento del total de la compensación otorgada* y por los prestados ante la Comisión una suma que no excederá de 15 por ciento *sobre el aumento obtenido con motivo de la apelación.* La segunda clasificación que cubre casos de incapacidad total y muerte, establece igual dicotomía—servicios prestados ante el Administrador o la Comisión Industrial—pautándose que: (a) por servicios prestados ante el Administrador se conce-

---

"La Comisión Industrial autorizará el pago de los siguientes honorarios . . .:

"(1) En los casos de incapacidad permanente:

"(A) Por servicios prestados ante el Administrador, *una suma que no excederá de 5 por ciento del total de la compensación otorgada.*

"(B) Por servicios prestados ante la Comisión, una suma que no excederá de 15 por ciento *sobre el aumento obtenido con motivo de la apelación.*

"(2) En los casos de incapacidad total o muerte:

"(A) Por servicios prestados ante el Administrador una suma que no excederá de 5 por ciento del total de *la compensación que se otorgue a los beneficiarios o al obrero que utilicen el abogado,* calculado a base de la compensación pensional que habrá de recibir el beneficiario o el obrero en 10 años.

"(B) Por servicios prestados ante la Comisión, una suma que no excederá de 15 por ciento *del aumento obtenido con motivo de la apelación.* Disponiéndose que en los casos surgidos a partir del día primero de julio de 1960, el por ciento se computará tomando como base el monto de los pagos pensionales que correspondan a los beneficiarios o al obrero durante un término de 10 años. Disponiéndose, además, *que en ningún caso se pagarán honorarios de abogado en exceso de la cantidad de $1,000.*

"(3) Por servicios prestados ante las cortes, la corte donde se presten los servicios fijará los honorarios según dispone la ley.

"(4) Al determinar el por ciento que como máximo habrá de concederse por servicios prestados ante el Administrador, la Comisión podrá requerir del abogado que radique una declaración jurada explicando en detalle los servicios prestados, la naturaleza de los mismos, y cualquiera otra información pertinente.

"(5) .      .      .      .      .      .      .      .

"(6) . . . ." (11 R.&R.P.R. sec. 8–7.) (Énfasis nuestro.)

derá, por concepto de honorarios de abogado, una suma que no excederá de 5 por ciento del total de la compensación que se otorgue al obrero o a los beneficiarios que utilicen al abogado, calculado a base de la compensación pensional que habrá de recibir el beneficiario o el obrero en 10 años; (b) por servicios prestados ante la Comisión se concederá una suma que no excederá del 15 por ciento *del aumento obtenido con motivo de la apelación.* (Se aclara que en los casos surgidos a partir del día 1 de julio de 1960, el por ciento se computará tomando como base el monto de los pagos pensionales que correspondan a los beneficiarios o al obrero durante un término de 10 años); y (c) que *en ningún caso se pagarán honorarios de abogado en exceso de la cantidad de $1,000.00.* Finalmente, como tercera clasificación se dispone que por servicios prestados ante los tribunales, éstos fijarán los honorarios según lo dispone la ley.

■ Advertimos que ante la Comisión Industrial los honorarios se fijan a base del criterio de aumento en compensación o beneficio decretado y recibido por el obrero como consecuencia de la gestión profesional realizada por su abogado y que según *Wiscovitch,* supra, la expresión "en ningún caso" referente a servicios prestados ante la Comisión, significa "en ningún caso de servicios prestados ante la Comisión se pagarán honorarios en exceso de $1,000.00."

■ Al confrontar estas normas al caso de autos, es errónea la validez de la determinación de la Comisión adjudicando honorarios por una apelación prematura improcedente. Hemos examinado los récords administrativos y no existe fundamento que justifique una segunda fijación de honorarios de abogado. La incapacidad fue aumentada de un setenta por ciento (70%) a una total y permanente en virtud de la evaluación interna realizada por el Comité de Factores Socio-Económicos y no por gestión profesional alguna llevada de la representación jurídica de la lesionada. La intervención de la Comisión

Industrial ante la apelación de la Orden de Pago y referimiento al Comité fue inoperante. De conformidad a la reglamentación existente, sólo procedía el pago del máximo permitido por ley: $1,000.00 por la apelación original. La fragmentación de gestiones de esta índole no sólo va en detrimento del estatuto sino contra la necesaria solvencia del Fondo.

*Se expedirá el auto solicitado y se dictará la correspondiente sentencia.*