ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| CARLOS RIVERA FONTÁNEZ<br><br>Recurrido<br><br>v.<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Recurrente | KLRA202300287 | REVISIÓN ADMINISTRATIVA Procedente de CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Caso núm.: 89-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-01<br><br>Sobre: INCAPACIDAD TOTAL FACTORES SOCIOECONÓMICOS |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Ronda Del Toro y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de agosto de 2023.

Comparece ante *nos*, la Corporación del Fondo del Seguro del Estado (CFSE o recurrente) y nos solicita que revisemos la *Resolución* emitida por la Comisión Industrial de Puerto Rico (Comisión Industrial) el 11 de abril de 2023 y notificada el 27 de abril de 2023; además, nos solicita que revisemos la *Resolución en Reconsideración* emitida por la Comisión Industrial el 18 de mayo de 2023 y notificada el 22 de mayo de 2023. Mediante la *Resolución* emitida el 11 de abril de 2023, la Comisión Industrial, entre otras cosas, le reconoció a Carlos Rivera Fontánez (Rivera Fontánez o recurrido) el derecho a recibir los beneficios establecidos en la Ley del Sistema de Compensaciones por Accidentes del Trabajo; le ordenó a la CFSE hacer efectivo a Rivera Fontánez los beneficios de la compensación reconocida; y, fijó los honorarios de abogado.

Por los fundamentos que expondremos a continuación, se *confirma* la *Resolución* de la cual se recurre.

**I.**

Según surge del expediente, Rivera Fontánez laboró para Western Auto como mecánico por quince (15) años. El 6 de diciembre de 1987, Rivera Fontánez sufrió un accidente de trabajo mientras se encontraba reparando un vehículo. Dicho accidente ocurrió mientras estaba reparando unos frenos delanteros. El 18 de diciembre de 1987, Rivera Fontánez acudió a la CFSE y presentó su reclamación. Allí, le indicaron que se había herniado los discos.

El 26 de septiembre de 1989, la CFSE le dio de alta y determinó que Rivera Fontánez tenía una incapacidad de un 15% ffg de las funciones fisiológicas generales por las condiciones de I-INP L4-5, radiculopatía izquierda L5 y radiculopatía izquierda S1. Consecuentemente, el 5 de diciembre de 1989, la CFSE determinó que Western Auto es un patrono no asegurado.

Oportunamente, Rivera Fontánez se reincorporó a trabajar con Western Auto. En el 1991-1992 se lesionó la muñeca izquierda; sin embargo, posteriormente, volvió a trabajar con Western Auto. Así las cosas, a Rivera Fontánez le fue aprobado el Seguro Social por Incapacidad, desde el 1992-1995. No obstante, no pudo retornar a la fuerza laboral por su condición, pues en la Vista Médica que se llevo a cabo el 20 de diciembre de 1999, se determinó que la incapacidad fue aumentada a un 20% ffg.

Luego de varios incidentes, el 20 de noviembre de 2015, se celebró una Vista Pública en la cual se confirmó la incapacidad de Rivera Fontánez en un 20% ffg y se refirió para evaluación a la CFSE por el Comité de Factores socio-económicos. Así las cosas, Rivera Fontánez fue evaluado por Nilda Rodríguez Negrón, especialista en Rehabilitación Vocacional, quien rindió su Informe el 25 de julio de 2017. El 31 de enero de 2018, se emitió una Decisión en la cual se

determinó que Rivera Fontánez no es acreedor de una incapacidad total permanente por factores socio-económicos.

Posteriormente, el 21 de abril de 2022, se celebró una Vista Pública. El 11 de abril de 2023, la Comisión Industrial emitió una *Resolución*, notificada el 27 de abril de 2023, donde, entre otras cosas, le reconoció a Rivera Fontánez una incapacidad total permanente. El 17 de mayo de 2023, la CFSE presentó una *Moción de Reconsideración*. El 18 de mayo de 2023, notificada el 22 de mayo de 2023, la Comisión Industrial emitió una *Resolución en Reconsideración* mediante la cual declaró *No Ha Lugar* la *Moción de Reconsideración.*

Inconforme con esa determinación, el 15 de junio de 2023, la parte recurrente acudió ante *nos* mediante un recurso de revisión judicial, alegando la comisión del siguiente error:

> **Cometió Error de Derecho la Honorable Comisión Industrial al determinar que procede una Incapacidad Total por Factores Socio-Económicos, aun cuando, no se cumple con los requisitos establecidos por el Honorable Tribunal Supremo, a saber, a) el carácter del impedimento físico del trabajador y su extensión médica y expresada desde el punto de vista médico en términos de la función fisiológica general, y b) el efecto de ese impedimento físico sobre la habilidad del obrero o trabajador para realizar un empleo remunerativo.**

Examinado el *Recurso de Revisión,* este Tribunal emitió una *Resolución* el 26 de junio de 2023, concediéndole un término de veinte (20) días a la parte recurrida para que expresara su posición al recurso.

## II.

### A. Revisión judicial de las determinaciones administrativas

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. *ECP Incorporated v. OCS*, 205 DPR 268, 281 (2020); *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2016).

Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. *Oficina de Ética Gubernamental v. Martínez Giraud*, 210 DPR 79 (2022). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. *Super Asphalt v. AFI*, 206 DPR 803, 819 (2021). En los casos de revisión judicial, "[e]l criterio a aplicarse no es si la decisión administrativa es la más razonable o la mejor al arbitrio del foro judicial; es, repetimos, si la determinación administrativa, en interpretación de los reglamentos y las leyes que le incumbe implementar, es una razonable". *Rivera Concepción v. A.R.Pe*, 152 DPR 116, 124 (2000).

La Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9675) (LPAU), dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. *P.R.T.C. Co. v. J. Reg. Tel. de P.R.*, 151 DPR 269, 281 (2000). Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. *T-JAC, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 80 (1999).

Las determinaciones de hechos de los organismos y agencias administrativas tienen a su favor una presunción de regularidad y corrección. *Henríquez v. Consejo Educación Superior,* 120 DPR 194, 210 (1987). De manera que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si éstas están sostenidas por evidencia sustancial que surja del expediente administrativo. *Asoc. Vec. H. San Jorge v. U. Med. Corp.,* 150 DPR 70, 75 (2000).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Hilton Hotels v. Junta Salario Mínimo,* 74 DPR 670, 687 (1953). Por ello, quien impugne las determinaciones de hechos de una agencia administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. *Com. Vec. Pro-Mej., Inc. v. J.P.,* 147 DPR 750, 761 (1999). Además, debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. *Rebollo v. Yiyi Motors,* 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra,* pueden ser revisadas en todos sus aspectos. Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas,

y cuestiones propias para la discreción o pericia administrativa". *Adorno Quiles v. Hernández,* 126 DPR 191, 195 (1990).

El foro judicial podrá sustituir el criterio del organismo administrativo por el propio únicamente en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. No obstante, es axioma judicial que, ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. *Dye-Tex de P.R., Inc. v. Royal Ins. Co.,* 150 DPR 658, 662 (2000).

Sin embargo, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. Simplemente, define el carácter limitado de la función revisora a casos apropiados. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. *Reyes Salcedo v. Policía de P.R.,* 143 DPR 85, 94 (1987).

**B. Ley del Sistema de Compensaciones por Accidentes del Trabajo**

La Ley Núm. 45-1935, según enmendada, es una legislación de carácter remedial que le brinda ciertas garantías y beneficios al obrero en el contexto de accidentes o enfermedades ocupacionales que ocurren en el escenario del trabajo. *Hernández Morales et al. v. CFSE,* 183 DPR 232,240 (2011). En otras palabras, el estatuto establece un sistema de seguro compulsorio y exclusivo para compensar a los obreros que sufran lesiones o enfermedades en el curso del empleo, brindándoles un remedio rápido, eficiente y libre de complejidades de una reclamación ordinaria en daños. *Id; Toro v. Policía,* 159 DPR 339, 353 (2003).

En lo pertinente, el Art. 3 de la Ley Núm.45-1935 define incapacidad total y permanente. A esos fines, establece que:

> *Se considerará incapacidad total la pérdida total y permanente de la visión industrial de ambos ojos, la pérdida de ambos pies por el tobillo o más arriba; la pérdida de ambas manos por la muñeca o más arriba; la pérdida de una mano o un pie; perturbaciones mentales totales que sean incurables, y las lesiones que tengan por consecuencia la incapacidad total y permanente del obrero o empleado, para hacer toda clase de trabajo u ocupaciones remunerativas.*

Conforme expresó nuestro más alto foro en *Rodríguez v. Comisión Industrial*, 90 DPR 764 (1964), para que se constituya una incapacidad total permanente o solo una incapacidad parcial permanente, va a depender del grado de habilidad que tiene la persona en cuestión para hacer toda clase de trabajos, considerando una serie de factores y circunstancias. Añade el Tribunal Supremos que lo anterior se determina a base del siguiente estándar: 1) el impedimento físico del trabajador y su extensión, medido y expresado desde el punto de vista médico en términos de pérdida de la función fisiológica general, y 2) el efecto de ese impedimento físico sobre la habilidad del obrero o trabajador para realizar un empleo remunerativo. Esto último envuelve un concepto legal medido y expresado por el grado de capacidad adquisitiva industrial del obrero, o su capacidad para ganarse el sustento.

Dicho de otro modo, el criterio fundamental para resolver si un trabajador ha quedado totalmente incapacitado, es la habilidad que posea después de la lesión o accidente para dedicarse a un trabajo que le produzca ingreso en forma ordinaria y de manera estable. No obstante, una persona puede ser catalogada como incapacitada total y permanentemente como consecuencia de un accidente del trabajo, aunque fuera capaz de realizar parte de un empleo; haya realizado algún trabajo después del accidente; y haya trabajado de forma discontinua e inestable. *Rodríguez v. Comisión Industrial, Id.*

De conformidad con lo anterior, podemos colegir que "incapacidad total" no significa una incapacidad absoluta para realizar cualquier tipo de trabajo. Conforme a nuestro ordenamiento jurídico, dicho concepto legal requiere un análisis práctico y razonable, que permita determinar si la persona no puede realizar aquellos aspectos sustanciales y básicos de su trabajo. *Rodríguez v. Comisión Industrial, Id.*

## C. Comité de Factores Socio-Económicos

El Comité de Factores socio-económicos es una estructura administrativa del Fondo, cuya función es ayudar a dicha corporación en la función fundamental de evaluar la capacidad de un obrero lesionado para realizar una labor remunerativa. *Hernández Morales, et al v. C.F.S.E.*, supra*; Agosto Serrano v. F.S.E.*, 132 DPR 866, 871. En *Herrera Ramos v. Comisión Industrial,* 108 DPR 316, 318-319 (1979), el Tribunal Supremo manifestó lo siguiente:

> *En resumen, el Comité es un cuerpo auxiliar permanente del Administrador para evaluar en ciertos casos, el conjunto de factores médicos y socioeconómicos reveladores de "la habilidad que posea [un obrero] después de la lesión o accidente para dedicarse a un trabajo que le produzca ingreso en forma ordinaria y de manera estable"; Rodríguez v. Comisión Industrial, supra, 775. Su función rectora es asesorar al Administrador y proveerle elementos de juicio fundados para que éste llegue a una decisión informada y razonable respecto al potencial de trabajo remunerativo de un lesionado.*

En ese sentido, el Reglamento Núm. 9294 de 2 de agosto de 2021 de la Corporación del Seguro del Estado, conocido como el *Reglamento para el Estudio y Adjudicación de Incapacidad Total y Permanente por Factores Socioeconómicos*, dispone que el objetivo y función del Comité es evaluar los casos de los obreros o empleados a los que se les haya reconocido una incapacidad parcial permanente de un 60% o más de las funciones fisiológicas generales,

a los fines de determinar si, al considerar determinar si este es acreedor de una incapacidad total y permanente.

Sin embargo, el Tribunal Supremo aclaró que el Comité no está limitado por el por ciento de incapacidad para evaluar los casos de los obreros o empleados lesionados. *Hernández Morales et al v. CFSE*, supra, 241. Sobre este particular, expresó que "[e]l aludido criterio de sesenta por ciento (60%) de incapacidad fijado por el Fondo no debe utilizarse como norma inflexible que excluya en casos meritorios la evaluación de alguna reclamación." *Hernández Morales et al v. C.F.S.E.*, *Id.*; *Agosto Serrano v. F.S.E.*, supra, 877. La evaluación que realice el Comité debe considerar, no sólo el por ciento de incapacidad desde el punto de vista médico, sino también los factores socio-económicos que rodean el obrero lesionado. *Hernández Morales et al v. C.F.S.E.*, supra, 242.

La Ley Núm. 45 establece, como norma general, que el Administrador del Fondo es quien adjudica en primera instancia las controversias sobre compensabilidad de los trabajadores que alegan que han sufrido lesiones relacionadas al trabajo. *Baerga Rodríguez v. F.S.E.*, 132 D.P.R. 524, 530-531 (1993). Si el obrero, empleado o sus beneficiarios no están de acuerdo con la decisión emitida por ese organismo, podrán apelar ante la Comisión. Esta última, actúa como un tribunal apelativo a nivel administrativo para pasar juicio en los casos de compensabilidad de lesiones que han sido adjudicadas en primera instancia por el Fondo. *Íd.* Al respecto, el Tribunal Supremo expresó en *Agosto Serrano v. F.S.E.*, supra, 875-876, lo que se reproduce a continuación:

> *La revisión de la determinación de si un obrero o empleado es elegible o no a los beneficios de una incapacidad total dentro del contexto del Art. 3 de la Ley de Compensaciones por Accidentes del Trabajo (Nota al calce omitida), es claramente un asunto que le compete a la Comisión como árbitro final de los derechos de los obreros a nivel administrativo. El hecho de que la elegibilidad a los beneficios de incapacidad total por el Fondo dependa inicialmente*

*de la evaluación y recomendación que haga el Comité del Fondo no afecta ni la autoridad administrativa final de la Comisión ni sus facultades cuasi judiciales. Como ya hemos señalado, dicho Comité es un cuerpo auxiliar que ejerce una importante función de asesoramiento, pero sus labores forman parte de todo un entramado administrativo en el cual la palabra final la tiene la Comisión. La existencia y reglamentación del Comité, pues, no pueden ser obstáculos que limiten la autoridad de la Comisión, sobre todo cuando se trata de un reglamento que no es de naturaleza legislativa. (Énfasis en original.)*

Por tanto, es menester señalar que al ejercer su función revisora de naturaleza cuasi judicial, la Comisión representa y vela por el interés público y no por los intereses particulares de ninguna de las partes. 11 L.P.R.A. Sec. 11; *Baerga Rodríguez v. F.S.E., supra,* 531.

### III.

En el presente caso, la parte recurrente alega que erró la Comisión Industrial al otorgar incapacidad total al recurrido por factores socioeconómicos ya que no se cumplieron con los requisitos establecidos por el Tribunal Supremo. Sustenta su contención en el carácter del impedimento físico del trabajador y su extensión médica y expresada desde el punto de vista médico en términos de la función fisiológica general y en el efecto de ese impedimento físico sobre la habilidad del obrero o trabajador para realizar un empleo remunerativo. A su entender, la prueba en el expediente de autos, específicamente el Informe de la Especialista en Rehabilitación Vocacional de la Corporación del Fondo de Seguro del Estado, establece que posterior al accidente sufrido el recurrido regresó a su trabajo hasta el año 1991. Añade, que luego de esa fecha, no regresó al trabajo y solicitó los beneficios del Seguro Social Federal.

Por su parte, la parte recurrida sostiene que el criterio fundamental para resolver si un trabajador ha quedado totalmente incapacitado, es la habilidad que posea después de la lesión o accidente para dedicarse a un trabajo que le produzca ingreso en

forma ordinaria y de manera estable. Sostiene, que del Informe de la Especialista en Rehabilitación Vocacional, surge que debido a las dolencias en la espalda a consecuencia del accidente en el trabajo, el recurrido presentaba dificultad para realizar labores de mecánico. Arguye, que de ninguna manera puede verse que una persona que tiene condiciones que no le permiten trabajar y acude a solicitar la incapacidad por el Seguro Social, intenta autoexcluirse del mercado laboral.

Según discutido anteriormente, al revisar determinaciones de una agencia administrativa impera el criterio de la razonabilidad. Esto quiere decir que no habremos de intervenir con dichas determinaciones a menos que no estén basadas en evidencia sustancial o cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. Conforme a ello, procedemos a revisar el expediente.

Surge del expediente ante nuestra consideración que el 21 de abril de 2023, se llevó a cabo la Vista Pública en la cual se otorgó la incapacidad total permanente por la vía de factores socioeconómicos. Cabe señalar, que en la Vista Pública testificó el recurrido. Entre otras cosas, declaró que el accidente en el trabajo afectó su capacidad para trabajar como mecánico. La representación legal del recurrente no le hizo preguntas.

Declaró, además, la Dra. Figueroa Cosme quien declaró que el recurrido tiene una incapacidad que alcanza el veinte por ciento (20%) de función fisiológica general, correspondiente a un esguince lumbosacral, HNP L4-L5, radiculopatía izquierda L5 y radiculopatía izquierda S1. La representación legal de la recurrente tampoco le hizo preguntas.

Finalmente, la parte recurrente presentó como evidencia el Informe de la especialista en rehabilitación vocacional, Nilda Rodríguez Negrón y el informe de trabajo social de Camille Adorno

Batista. En ambos informes se menciona que la razón para que el recurrido dejara de trabajar lo fue su problema de la espalda causado por el accidente en el trabajo. Dicha prueba no fue rebatida por la recurrente. En atención a ello y a base de los testimonios vertidos y de los informes sometidos, la Comisión Industrial concluyó que el recurrido dejó de trabajar asalariadamente debido a que se encontraba afectado por su condición lumbar y decretó su incapacidad total permanente.

Conforme a nuestro ordenamiento jurídico, el recurrente debió demostrar la existencia de otra prueba que sostuviera que la actuación de la agencia no estuvo basada en evidencia sustancial o que redujera el valor de la evidencia impugnada. *Com. Vec. Pro-Mej., Inc. V. JP*, 147 DPR 750, 761 (1999). No obstante, en el presente caso, eso no ocurrió. La evidencia que tuvo ante su consideración la Comisión Industrial puede razonablemente ser aceptada como adecuada para sostener sus determinaciones de hechos. *OEG v. Martínez Giraud*, supra; *Batista, Nobbe v. Jta. Directores*, supra. En consecuencia, concluimos que el señalamiento de error no fue cometido, pues las determinaciones de hechos en el presente caso tienen base en evidencia sustancial que obra en el expediente administrativo, por lo que deben ser sostenidas por este Tribunal.

**IV.**

Por los fundamentos que anteceden, los que se hacen formar parte del presente dictamen, se *confirma* la Resolución recurrida.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones