Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| CARLOS M. ORTIZ LUGO<br><br>Lesionado-Recurrido<br><br>COOP SERV. EQUIPAJE<br><br>Patrono<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Asegurador-Recurrente<br><br>COMISIÓN INDUSTRIAL DE PUERTO RICO<br><br>Agencia-Recurrida | TA2025RA00310 | *REVISIÓN ADMINISTRATIVA* procedente de la Comisión Industrial de Puerto Rico<br><br>Caso C.I. Núm.: 87600-03-7167-01<br><br>Caso C.F.S.E. Núm.: 87-15-03991-6<br><br>Sobre: Incapacidad Total (Factores Socio Económicos) |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 18 de noviembre de 2025.

Comparece el Administrador de la Corporación del Fondo del Seguro del Estado (Administrador) y, mediante el recurso de epígrafe, nos solicita que revoquemos una *Resolución* emitida por la Comisión Industrial de Puerto Rico (Comisión Industrial) el 6 de febrero de 2025, la cual fue notificada a las partes el 7 de agosto de 2025. Mediante el dictamen recurrido, la Comisión Industrial revocó una decisión previa del Administrador, la cual fue notificada el 26 de octubre de 2017. En consecuencia, determinó que Carlos M. Ortiz Lugo tiene derecho a recibir los beneficios de incapacidad total permanente por factores socioeconómicos, según establecidos en la *Ley del Sistema de Compensaciones por Accidentes del Trabajo,* Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 LPRA sec. 1 *et seq.*

Por los fundamentos que se exponen a continuación, se confirma la *Resolución* recurrida. Veamos.

**I**

El 24 de marzo de 1987, Carlos M. Ortiz Lugo (Ortiz Lugo) presentó un informe patronal. En este, alegó que, desde diciembre de 1986, y como consecuencia de su trabajo de acarrear equipaje para la Cooperativa de Servicios de Equipaje en el Aeropuerto Internacional Luis Muñoz Marín, comenzó a sentir dolor en ambas piernas, lo cual le dificultaba caminar.[1]

Tras recibir tratamiento rehabilitador en la Corporación del Fondo del Seguro del Estado (CFSE), la corporación pública le dio de alta con un veinticinco por ciento (25%) de incapacidad permanente en cuanto a sus funciones fisiológicas por la pérdida de la pierna izquierda, debido a que esta eventualmente le fue amputada por el tercio superior del muslo.[2] Posteriormente, Ortiz Lugo recibió tratamiento adicional en la CFSE y el por ciento de incapacidad correspondiente a la condición de su pierna izquierda aumentó a cuarenta por ciento (40%), lo cual equivale a un dieciséis por ciento (16%) de las funciones fisiológicas generales. Asimismo, la Comisión Industrial refirió el caso al Programa de Rehabilitación Integral de la CFSE, para su evaluación.[3]

El 17 de mayo de 2007, la CFSE notificó una *Decisión* sobre rehabilitación vocacional.[4] Mediante esta, la CFSE concluyó que Ortiz Lugo tenía potencial ocupacional para tareas livianas o sedentarias.

Luego de varios trámites procesales, el 16 de febrero de 2017, la Comisión Industrial celebró una vista, tras lo cual el 23 de febrero de 2017, emitió una *Resolución*, que fue notificada el 3 de abril de

---

[1] Véase apéndice 5, entrada 7 del recurso en SUMAC TA.
[2] Véase apéndice 6, entrada 8 del recurso en SUMAC TA.
[3] Véase apéndice 7, entrada 9 del recurso en SUMAC TA.
[4] Véase apéndice 8, entrada 10 del recurso en SUMAC TA.

2017.[5] Esencialmente, mediante el referido dictamen, la Comisión Industrial concluyó, a base de la prueba desfilada que, hasta el 2007, Ortiz Lugo todavía podía rehabilitarse de su condición, mas no así en el 2017. En consecuencia, confirmó parcialmente la *Decisión* de la CFSE, que fue notificada el 17 de mayo de 2007. Esta *Resolución* no fue objeto de alguna solicitud de reconsideración o de algún recurso de revisión judicial ante este foro revisor, por lo que es final y firme.

Respecto a la *Resolución* antes mencionada, es importante destacar que, mediante esta, la Comisión Industrial también determinó remitir el caso al Comité de Factores Socioeconómicos de la CFSE (Comité). En específico, le delegó al Comité llevar a cabo una evaluación conducente a determinar si Ortiz Lugo estaba totalmente incapacitado para desempeñar alguna tarea remunerativa en la industria, que le produzca ingresos de forma ordinaria y de manera estable.

Luego de culminada la evaluación del caso por parte del Comité, el 3 de octubre de 2017, el Administrador emitió una *Decisión*, que fue notificada el 26 de octubre de 2017.[6] En esta, el Administrador resolvió que Ortiz Lugo no es acreedor a una incapacidad total y permanente por factores socioeconómicos, ya que poseía ingresos económicos fijos y estables.

Insatisfecho, el 22 de noviembre de 2017, Ortiz Lugo presentó un *Escrito de Apelación* ante la Comisión Industrial.[7] Mediante el recurso instado, solicitó una vista pública para revisar la *Decisión* notificada el 26 de octubre de 2017.

Tras varias incidencias procesales, la vista solicitada se llevó a cabo el 12 de noviembre de 2024. Durante esta, las partes

---

[5] Véase apéndice 9, entrada 11 del recurso en SUMAC TA.
[6] Véase apéndice 2, entrada 4 del recurso en SUMAC TA.
[7] Véase *Escrito de Apelación*, entrada 1 del recurso en SUMAC TA.

estipularon un informe suscrito por una trabajadora social.[8] Como parte de la prueba presentada, Ortiz Lugo declaró. Asimismo, desfiló el testimonio de la Dra. Ivette Ríos Mejía, perito médico de la CFSE y de la Dra. Carmen Figueroa Cosme, perito médico de la Comisión Industrial, quienes revisaron el expediente de Ortiz Lugo y cuyos testimonios giraron en torno a las incapacidades que tiene.

Tras aquilatar la prueba presentada durante la vista, el 21 de febrero de 2025, el Oficial Examinador rindió un *Informe*, en el que recomendó revocar la *Decisión* del Administrador, notificada el 26 de octubre de 2017. En consecuencia, consideró que corresponde determinar que Ortiz Lugo tiene derecho a recibir los beneficios de la *Ley del Sistema de Compensaciones por Accidentes del Trabajo*, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 LPRA sec. 1 *et seq.*, para casos de incapacidad total permanente por factores socioeconómicos. Por su parte, la Comisión Industrial acogió el referido *Informe*, mediante una *Resolución* emitida el 16 de julio de 2025, notificada el 7 de agosto de 2025 y recibida al día siguiente.[9]

En desacuerdo, el 27 de agosto de 2025, el Administrador presentó una *Moción de Reconsideración*.[10] Tras evaluar dicha moción, la Comisión Industrial la declaró No Ha Lugar mediante una *Resolución* emitida el 17 de septiembre de 2025, notificada al día siguiente.[11]

Todavía inconforme, el 10 de octubre de 2025, el Administrador acudió ante este Foro mediante el recurso de epígrafe y señaló los siguientes errores:

> Erró la Comisión Industrial al resolver que la parte obrera es acreedora de una incapacidad total por factores socioeconómicos cuando dicha determinación

---

[8] Véase apéndice 10, entrada 12 del recurso en SUMAC TA.
[9] Véase *Resolución*, entrada 2 del recurso en SUMAC TA.
[10] Véase apéndice 3, entrada 5 del recurso en SUMAC TA.
[11] Véase apéndice 4, entrada 6 del recurso en SUMAC TA.

no cumple con los criterios establecidos por la ley y la jurisprudencia interpretativa en estos casos.

Erró la Comisión Industrial al no considerar el contenido del Informe de Trabajo Social del 29 de mayo de 2024, sometido y estipulado por las partes, en el análisis y evaluación del caso.

Evaluado lo anterior, le ordenamos a la parte recurrida presentar su alegato en oposición, de conformidad con lo dispuesto en la Regla 63 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 63. Sin embargo, transcurrido dicho término, el cual venció el 10 de noviembre de 2025, la parte recurrida no presentó escrito en oposición, por lo que procedemos a resolver sin el beneficio de su comparecencia.

**II**

**A**

Sabido es que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que cuentan con vasta experiencia y pericia para atender aquellos asuntos que la Asamblea Legislativa les ha delegado. *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 484 (2024); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud,* 210 DPR 79, 116-117 (2022). Es por ello, que tales determinaciones gozan de una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Transp. Sonnell, v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs. Bank*, supra, pág. 484; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215-216 (2012).

No obstante, la norma antes reseñada tampoco es absoluta. Al respecto, el Tribunal Supremo ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones administrativas que sean irrazonables, ilegales o

contrarias a derecho. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743, 754 (2024).

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial. Sobre el particular, detalló lo siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. [Cita omitida] Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 127 (2019); *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, la revisión judicial se limita a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *OEG v. Martínez Giraud*, supra.

Bajo este supuesto, la sección 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, 3 LPRA sec. 9675 (LPAU), estableció "el marco rector aplicable a la revisión judicial de las determinaciones de las agencias administrativas". *Otero Rivera v. USAA Fed. Savs. Bank*, supra, pág. 484; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). De este modo, la intervención del tribunal se limita a tres áreas, a saber:

(1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos que la agencia realizó están sostenidas por la evidencia sustancial que obra en el expediente administrativo, visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, res. el 27 de marzo de 2025, 2025 TSPR 33, citando a *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012); *Rolón Martínez v. Supte. Policía*, supra, págs. 35-36.

Por otro lado, las conclusiones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. No obstante, los tribunales deberán dar peso y deferencia a las interpretaciones que la agencia realice respecto a aquellas leyes y reglamentos que administra. *Rolón Martínez v. Supte. Policía*, supra.

En fin, el Tribunal Supremo ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR*, supra, págs. 627-628; *OEG v. Martínez Giraud*, supra, pág. 90.

De este modo, el Alto Foro ha expresado que el criterio administrativo no podrá prevalecer en aquellas instancias en que la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, considera que "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que

conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud*, supra, pág. 91.

**B**

En nuestro ordenamiento jurídico, la protección contra riesgos a la salud que cobija a cada trabajador en el contexto de su empleo tiene rango constitucional. Art. II, sec. 16, Const. PR, LPRA, Tomo 1. En consideración a ello, la Asamblea Legislativa aprobó la *Ley del Sistema de Compensaciones por Accidentes del Trabajo*, Ley Núm. 45 del 18 de abril de 1935, según enmendada, 11 LPRA sec. 1 *et seq.* (Ley Núm. 45), en virtud de la cual también se creó la Corporación del Fondo del Seguro del Estado.

Sobre la Ley Núm. 45, el Tribunal Supremo ha expresado que se trata de una legislación que goza de carácter remedial, la cual "consagra ciertas garantías y beneficios al obrero que haya sufrido un accidente o enfermedad ocupacional en el escenario del trabajo". *Rivera v. Blanco Vélez Stores*, 155 DPR 460, 466 (2001); *Soc. de Gananciales v. Royal Bank de P.R.*, 145 DPR 178, 194 (1998). En lo pertinente, el Alto Foro también ha expresado que esta ley "se aprobó con el propósito de mantener en vigor la política pública de prestación de servicios médicos a obreros y empleados por lesiones, incapacidad o muerte relacionada con el trabajo". *Agosto Serrano v. F.S.E.*, 132 DPR 866, 874 (1993). En fin, la aprobación del referido estatuto puso en vigor la política pública de proveer a los trabajadores servicios médicos y compensación por lesión, incapacidad o muerte relacionada con el desempeño del trabajo. *Guzmán y otros v. E.L.A.*, 156 DPR 693, 704-705 (2002).

En lo pertinente, el Artículo 2 de la Ley Núm. 45, establece que sus disposiciones son aplicables a todo obrero o empleado que sufra lesiones y resulta incapacitado, o que pierda la vida por accidentes ocurridos mientras realiza funciones inherentes a su empleo y que haya ocurrido en el curso de este. 11 LPRA sec. 2. De

este modo, el Tribunal Supremo reitera que la protección que cobija a un obrero o empleado, en virtud de esta disposición, se extiende a las lesiones que este pueda sufrir como consecuencia de accidentes que provengan de cualquier acto o función inherente al trabajo que desempeñe, que ocurran en el curso del trabajo o como consecuencia de este. *Pacheco Pietri y otros v. E.L.A. y otros*, 133 DPR 907, 915-916 (1993); *Díaz Ortiz v. F.S.E.*, 126 DPR 32, 38 (1990); *Cardona Velázquez v. Comisión Industrial*, 90 DPR 257, 264 (1964).

Así también, el Artículo 3 de la Ley Núm. 45, el cual versa sobre los derechos de obreros y empleados, dispone aquellas situaciones en que se considerará a un obrero total y permanentemente incapacitado. 11 LPRA sec. 3. Es importante destacar que, en casos de lesiones por accidentes del trabajo, la ley provee asistencia médica independientemente de que se produzca o no una incapacidad o la muerte. *Íd.* En cualquier caso, esta solo dispone el beneficio de compensación para lesiones que produzcan incapacidades, sean estas transitorias, parciales permanentes, totales permanentes o la muerte. *Íd.*

Sobre las determinaciones de incapacidad, el Tribunal Supremo ha dispuesto que "el criterio fundamental para resolver si un trabajador ha quedado totalmente incapacitado es la habilidad que posea después de la lesión o accidente para dedicarse a un trabajo que le produzca un ingreso en forma ordinaria y de manera estable". *Arzola Maldonado v. Comisión Industrial*, 92 DPR 549, 552 (1965). De forma cónsona, en *Rodríguez v. Comisión Industrial*, 90 DPR 764, 771-772 (1964), el Alto Foro había resuelto que, para que una enfermedad constituya una incapacidad total permanente o una incapacidad parcial permanente, depende del grado de habilidad que tenga el obrero para hacer toda clase de trabajos u ocupaciones remunerativas.

En fin, que el Tribunal Supremo reconoce que la determinación de si un obrero o empleado está incapacitado y, en consecuencia, es acreedor a la compensación que le corresponda conforme a la Ley Núm. 45, no debe realizarse con sujeción exclusiva a los impedimentos físicos que le haya causado la lesión o enfermedad que haya resultado del empleo. En cambio, la evaluación también debe abarcar aspectos concernientes a la edad, sexo, profesión, escolaridad y las oportunidades de empleo disponibles en el área donde el trabajador resida. *Agosto Serrano v. F.S.E.,* supra, págs. 871-872; *Herrera Ramos v. Comisión Industrial,* 108 DPR 316, 318-319 (1979).

En virtud del derogado Reglamento Núm. 3470 de 20 de abril de 1987, denominado *Reglamento sobre Factores Socio-Económicos,* se crea el Comité de Factores Socioeconómicos. De conformidad con el hoy vigente Reglamento Núm. 9681 de 6 de agosto de 2025, conocido como *Reglamento para el estudio y adjudicación de incapacidad total y permanente por factores socioeconómicos,* este comité consta de un "[g]rupo de profesionales encargados de evaluar reclamaciones relacionadas a los factores socioeconómicos, una vez completados los informes requeridos". Así, el propio reglamento define el concepto "factores socioeconómicos", como sigue:

> Aquellos factores que inciden sobre el trabajador para facilitar u obstaculizar que pueda llevar a cabo labores remunerativas de manera estable y de forma ordinaria. Se considerarán los siguientes factores: el impedimento físico y/o mental del trabajador, su extensión, medido y expresado desde el punto de vista médico en términos de la pérdida de las funciones fisiológicas generales y el efecto de dicho impedimento sobre la habilidad del obrero para realizar un empleo remunerativo en forma ordinaria y estable; la edad, el género, nivel educativo, destrezas adquiridas, situación económica, historial ocupacional, capacidad residual funcional en referencia a las enmiendas del Acta de Rehabilitación Vocacional de 1973, en cuanto a limitación severa cuando hay restricción o limitación en una o más de las capacidades funcionales como: movilidad, autodirección, comunicación, cuidado propio, tolerancia al trabajo o destrezas de trabajo en términos de empleabilidad.

Esbozada la norma jurídica aplicable, procedemos a resolver.

**III**

Mediante el primer señalamiento de error formulado en el recurso de epígrafe, el Administrador planteó que la Comisión Industrial incidió al resolver que Ortiz Lugo es acreedor a una incapacidad total por factores socioeconómicos, cuando dicha determinación no cumple con los criterios establecidos por la ley y la jurisprudencia interpretativa en estos casos. No tiene razón.

Luego de aquilatar la prueba presentada durante la vista, el Oficial Examinador consignó en el Informe que la Comisión Industrial posteriormente acogió en la *Resolución* recurrida, lo siguiente:

> A lo largo de los cuarenta años que lleva esta reclamación en el sistema, la prueba pericial, documental y testifical establece de manera fehaciente que las condiciones relacionadas causaron en el obrero un grado de impedimento físico medido desde el punto de vista médico, en términos de la función fisiológica general, tuvo el efecto de afectar adversamente la habilidad del obrero para realizar un empleo remunerativo.[12]

Como parte de su argumentación, el Administrador cuestiona que, a su juicio, la Comisión Industrial pasó por alto el hecho de que el propio ente apelativo había determinado, en virtud de una *Resolución* que fue notificada el 6 de abril de 2017, que Ortiz Lugo tuvo el potencial de rehabilitarse en el 2007, aunque no así en el 2017, cuando estaba próximo a cumplir 73 años. Asimismo, el Administrador argumenta en el recurso de epígrafe que, en aquel entonces, los especialistas en rehabilitación que evaluaron el caso concluyeron que Ortiz Lugo poseía destrezas transferibles para realizar un trabajo sedentario y liviano.

Así las cosas, luego de evaluado el recurso ante nos, a la luz del estándar de derecho aplicable a las revisiones judiciales de

---

[12] *Resolución*, entrada 2 del recurso en SUMAC TA, a la pág. 16.

decisiones administrativas, concluimos que no concurren las condiciones necesarias para derrotar la presunción de legalidad y corrección que cobija al dictamen recurrido. Así, pues, de un examen minucioso de las determinaciones de hechos consignadas por el Oficial Examinador que rindió el *Informe* en el que se basa la *Resolución* recurrida, surge que estas se basan en la prueba presentada durante la vista, y que no medió prejuicio o parcialidad en el ejercicio de aquilatar la prueba.

Particularmente, destacamos que las determinaciones de hechos formuladas por el oficial examinador encuentran apoyo, tanto en el testimonio del propio Ortiz Lugo, como en la evaluación que realizaran de su expediente médico, las doctoras Ríos Mejía y Figueroa Cosme, quienes testificaron como peritos médicos de la CFSE y la Comisión Industrial, respectivamente. La doctora Ríos Mejía reconoció que, ante la realidad de que Ortiz Lugo se vio impedido de continuar sus labores como maletero, la CFSE no tomó acciones afirmativas para recomendarle a su patrono que le hiciera un acomodo razonable conducente a que pudiese realizar labores de carácter liviano.

Por su parte, la doctora Figueroa Cosme también expresó desconocer qué tipo de seguimiento, si alguno, la CFSE dio a la recomendación del Programa de Rehabilitación Integral de la CFSE cuando estableció que Ortiz Lugo podía desempeñarse en labores de intensidad leve a moderada. Lo anterior cobra mayor significancia cuando se considera el hecho de que la prueba desfilada también reflejó que el trabajo que Ortiz Lugo realizaba en el aeropuerto como maletero conllevaba el acarreo de maletas cuyo peso fluctuaba entre las 35 a las 50 libras, por lo que no puede considerarse una labor de naturaleza liviana. En lo pertinente, en el referido *Informe* se expresó lo siguiente:

> El Fondo en ningún momento le ordenó o le sugirió al patrono que hubiera un acomodo razonable. Esta persona [Ortiz Lugo] se reporta en el 1987 y no es[...] hasta el 2005 que es evaluado por Rehabilitación Vocacional. Se vio lo de Rehabilitación Vocacional, pero hay que tomar en cuenta justamente ese factor [de] que estuvo por más de 15 años fuera del ámbito laboral sin que se le evaluara en ese aspecto. Que sí es cierto que podía tener labores de aspecto liviano, es correcto. Sin embargo, nunca se evaluó qué tipo de trabajo podía realizar este lesionado. El Fondo falló en ese sentido y entendemos que procedería desde el punto de vista médico laboral la incapacidad total.[13]

El Administrador también argumenta que la CFSE no pudo darle al caso de Ortiz Lugo el seguimiento requerido, debido a que este optó por mudarse a los Estados Unidos. Sin embargo, la prueba evaluada por la Comisión Industrial reflejó que Ortiz Lugo "nunca tuvo la intención de rechazar los ofrecimientos del FSE" y que "siempre estuvo disponible para evaluación".[14] Asimismo, sobre este particular, la Comisión Industrial concluyó que "surgen datos irrefutables que señalan que desde entonces el obrero presentaba factores adversos para sostener una adecuada capacidad laboral".[15]

Por último, mediante el segundo de los señalamientos de error formulados, el Administrador adujo que la Comisión Industrial incidió al no considerar en el análisis y evaluación del caso, el contenido del Informe de Trabajo Social del 29 de mayo de 2024, el cual fue sometido y estipulado por las partes. Este error tampoco se cometió.

El contenido del informe al que alude el Administrador en este señalamiento de error gira en torno al aspecto socioeconómico y social de la situación de Ortiz Lugo. Mediante este, la Trabajadora Social a cargo aludió a que, luego de evaluar la prueba que desfiló durante una vista pública llevada a cabo el 29 de junio de 2017, la Comisión Industrial validó la determinación previa de la CFSE

---

[13] *Resolución*, entrada 2 del recurso en SUMAC TA, a la pág. 8.
[14] *Resolución*, entrada 2 del recurso en SUMAC TA, a la pág. 10.
[15] *Resolución*, entrada 2 del recurso en SUMAC TA, a la pág. 10.

respecto a que Ortiz Lugo tuvo potencial para rehabilitarse, desde el punto de vista de rehabilitación vocacional. Además, en su discusión de este señalamiento, el Administrador destaca que Ortiz Lugo padece condiciones incapacitantes que no están relacionadas con el accidente del trabajo que este sufrió en 1986; a saber, insuficiencia venosa crónica en ambas piernas, maya de arteria del corazón, colesterol alto y alta presión, así como que fue operado en la pierna derecha como resultado de la mencionada condición de las venas.

Luego de analizar el segundo señalamiento de error, a la luz de lo expresado por la Comisión Industrial en la *Resolución* recurrida, así como en consideración a la prueba que surge de la totalidad del expediente, consideramos que este planteamiento no amerita mayor discusión. Ello, pues, en este caso, no concurren las condiciones que señala la jurisprudencia interpretativa sobre el estándar de revisión judicial aplicable a las determinaciones administrativas. En consecuencia, no debemos intervenir para variar el dictamen recurrido.

En fin, de un análisis de las determinaciones de hechos surge que están basadas en la evidencia sustancial que obra en el expediente administrativo. Asimismo, consideramos que tampoco surge de la *Resolución* recurrida que las conclusiones de derecho sean erradas. En fin, procede confirmar el dictamen recurrido.

**IV**

Por los fundamentos que anteceden, se confirma la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones